UNITED STATES, Appellee,

v.

**Vance P. DAVIDSON, Airman First Class, U. S. Air Force, Appellant.**

No. 41,303.
ACM 22826.

U. S. Court of Military Appeals.

Sept. 7, 1982.

For Appellant: *Captain J. Laurens Tullock* (argued); *Colonel George R. Stevens* (on brief); *Major Wade B. Morrison.*

For Appellee: *Lieutenant Colonel Bruce R. Houston* (argued); *Colonel James P. Porter* (on brief).

For Amicus Curiae on Behalf of Appellant: *Lieutenant Commander David S. Durbin*, JAGC, USNR (argued); *Commander Walter J. Landen, Sr.*, JAGC, USN (on brief).

For Amicus Curiae on Behalf of Appellee: *Lieutenant Commander Michael R. McGuire*, JAGC, USN (argued); *Captain T. C. Watson, Jr.*, JAGC, USN (on brief).

*Opinion*

FLETCHER, Judge:

Appellant was found guilty of involuntary manslaughter, in violation of Article 119, Uniform Code of Military Justice, 10 U.S.C. § 919.[1] The members of his general court-martial sentenced him on March 28, 1980, to a dishonorable discharge, 3 years' confinement at hard labor,[2] total forfeitures, and reduction to the lowest enlisted pay grade. The convening authority approved this sentence.[3] The Court of Military Review affirmed the findings of guilty and the sentence.[4] His sentence to confinement at hard labor has not yet been ordered executed. Article 71(c), UCMJ, 10 U.S.C. § 871(c).[5]

After announcement of findings of guilty, the assistant trial counsel noted that "[t]he accused has been in pretrial restraint at Spangdahlem Air Base Germany, and other locations, since the 5th of November 1979." Several witnesses were called by the defense to testify as to appellant's good conduct while in pretrial confinement. Defense counsel further argued to the members that appellant's pretrial confinement should be considered by them in arriving at

1. Appellant was charged with premeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. He was found not guilty of this offense but guilty of the lesser included offense of involuntary manslaughter, in violation of Article 119, UCMJ, 10 U.S.C. § 919. *See* Article 79, UCMJ, 10 U.S.C. § 879.

2. This is the maximum confinement at hard labor authorized as punishment for this offense. Article 56, UCMJ, 10 U.S.C. § 856; para. 127c, Manual for Courts-Martial, United States, 1969 (Revised edition). Both parties at trial agreed and the military judge so instructed the members.

3. Appellant's sentence was approved on July 18, 1980, and the place of confinement pending appellate review was designated as the United States Disciplinary Barracks, Fort Leavenworth, Kansas. His sentence to confinement at hard labor could not be executed until appellate review was completed under Articles 66 and 67, UCMJ, 10 U.S.C. §§ 866 and 867, respectively. *See* Article 71(c), UCMJ, 10 U.S.C. § 871(c). Appellant, however, was transferred to the disciplinary barracks and confined while awaiting completion of appellate review. *See* Reed v. Ohman, 19 U.S.C.M.A. 110, 116–17, 41 C.M.R. 110, 116–17 (1969). Military prison authorities were required to compute appellant's sentence to be served when they received the order of the convening authority approving the sentence. *See* para. 4–5, AR 190–47 (Oct. 1978). In their computation, they were to consider that appellant's sentence to confinement began to run on the date it was adjudged by the court-martial. Article 57(b), UCMJ, 10 U.S.C.

§ 857(b). In a loose sense, appellant could be said to be serving his sentence to confinement during this period. *See Reed v. Ohman, supra* at 116 n.3, 41 C.M.R. at 116 n.3. *See also* Article 13, UCMJ, 10 U.S.C. § 813, *as amended* by Act of November 20, 1981, Pub.L.No. 97–81, 95 Stat. 1085; H.R. 4792, H.R.Rep.No. 97–306, 97th Cong., 1st Sess. 4–5 (1981), U.S.Code Cong. & Admin.News 1981, p. 1769.

4. This decision of the Court of Military Review was handed down on May 15, 1981. During the pendency of appellant's appeal before this Court, he was released on parole on September 24, 1981. 10 U.S.C. § 952; AFR 125–23 (1976). *See generally* AR 190–47 (1978).

5. In federal district court, once sentence is imposed and the judgment is signed by the judge and entered by the clerk, it may be executed unless stayed by the court. *See* Fed.R.Crim.P. 32 and 38(a). The execution of sentence may be stayed by taking an appeal (Fed.R.App.P. 3 and 4), and being released after judgment of conviction in accordance with Fed.R.App.P. 9(b) and 18 U.S.C. §§ 3146, 3148. If the execution is not stayed, the executed sentence shall begin to run from the date on which the federal prisoner is received at the place of incarceration for service of such sentence with credit to be given by the attorney general for previous time in custody related to the conviction. 18 U.S.C. § 3568. In view of these civilian procedures, the length of time between judgment and execution of sentence should not be as long as the same period in the military justice system.

an appropriate sentence. Defense counsel, however, did not request a particular instruction that appellant's time in pretrial confinement be considered by the members in arriving at an appropriate sentence. The military judge did not give such an instruction. On appeal, both sides agree that appellant was in pretrial confinement for a period of 143 days.

Before the Court of Military Review and before this Court in his initial petition for review, appellant challenged the legality of this sentence adjudged by the court-martial and approved by the convening authority. He asserted that "[t]he military judge erred by failing to instruct the jury that in adjudging an appropriate sentence, they should consider time spent by the appellant in pretrial confinement." He further averred that "appellant's sentence is illegal in that it exceeds the maximum punishment authorized in the Table of Maximum Punishments." The Court of Military Review affirmed the findings of guilty and the sentence without particularly indicating its opinion as to these issues.

This Court specified the following issue for review:

WHEN THE COMBINATION OF PRETRIAL CONFINEMENT AND CONFINEMENT ADJUDGED IS GREATER THAN THE MAXIMUM CONFINEMENT AUTHORIZED BY THE TABLE OF MAXIMUM PUNISHMENTS, MUST ACTION BE TAKEN BY THE CONVENING AUTHORITY OR THE COURT OF MILITARY REVIEW TO ASSURE THAT THE TIME SPENT IN CONFINEMENT IS NOT GREATER THAN THE MAXIMUM CONFINEMENT AUTHORIZED BY THE TABLE IN VIEW OF THE DUTY TO APPROVE ONLY AN APPROPRIATE SENTENCE.

Appellant, relying on *United States v. Griffin*, 20 C.M.R. 529 (N.B.R.1955), asserts that he is entitled to a sentence approved by the convening authority or affirmed by the Court of Military Review which gives him credit for his pretrial confinement. He argues that the adjudged sentence of confinement at hard labor and the confinement served prior to the court-martial cannot exceed the maximum punishment authorized for the offense by the President in paragraph 127c, Manual for Courts-Martial, United States, 1969 (Revised edition). *See* Article 56, UCMJ, 10 U.S.C. § 856. Accordingly, he concludes that his sentence, to the extent it fails to credit him with his pretrial confinement, is illegal. *See generally McClaughry v. Deming*, 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902); *Runkle v. United States*, 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887).

The decision in *United States v. Griffin, supra*, as a matter of law, offers little, if any, support for appellant's argument. In that case, the Board of Review, in the exercise of its unique sentencing power, felt that credit should be given to that particular accused. *See* Article 66(c), UCMJ, 10 U.S.C. § 866(c). It simply found the sentence too severe under the facts of that case and in view of the time appellant spent in pretrial confinement. *United States v. Talty*, 17 U.S.C.M.A. 491, 38 C.M.R. 289 (1968); *United States v. Lanford*, 6 U.S.C.M.A. 371, 20 C.M.R. 87 (1955). No immutable principle of law was established by this decision requiring that all convicted servicemembers be given credit by the Board of Review for time spent in pretrial confinement.[6]

Appellant has not introduced any evidence that his pretrial confinement was more rigorous than necessary to insure his presence for trial. *See* Article 13, UCMJ, 10 U.S.C. § 813. Moreover, he has not shown that the conditions of this confinement were as onerous as those faced by prisoners serving sentences to confinement at hard labor executed in accordance with Article 71(c). Accordingly, his claim must be considered technical in nature and its merit dependent on the validity of his assumption that pretrial confinement as a matter of military law is punishment of confinement at hard labor for purposes of

---

**6.** *Cf. Thomas v. United States*, 8 M.J. 504 (A.F. C.M.R.1979); *United States v. Corl*, 6 M.J. 914 (N.C.M.R.1979); *Hart v. Kurth*, 5 M.J. 932 (N.C.M.R.1978).

Article 56 and paragraph 127*c*, Manual, *supra. See Noyd v. Bond*, 395 U.S. 683, 696, 89 S.Ct. 1876, 1883, 23 L.Ed.2d 631 (1969).

Pretrial arrest and confinement are not new procedures to the enforcement of military law in our armed forces. *See* DeHart, *Courts-Martial* 71–81 (1846). In fact, such confinement was traditionally considered to continue until it was terminated by the proper reviewing authority in his action upon the proceedings of the court-martial. *See* G. Davis, *A Treatise on the Military Law of the United States* 64 (3rd ed. 1913 Revised); W. Winthrop, *Military Law and Precedents* 117, 123, 475 (2nd ed. 1920 Reprint). Confinement during this period was viewed as a matter of law wholly distinguished from confinement imposed by sentence because a prisoner could not be legally punished until the convening authority acted. *See* Davis, *supra* at 160–61, 189; Winthrop, *supra* at 124–25. It was not considered punishment but temporary restraint only as strict as necessary to secure the presence of the accused for trial and execution of his sentence.[7] *Id.*

■ The Uniform Code of Military Justice likewise defines pretrial confinement as "the physical restraint of a person." Article 9, UCMJ, 10 U.S.C. § 809. Moreover, in enacting Article 10, UCMJ, 10 U.S.C. § 810, Congress also acknowledged that persons may be confined, if necessary, for the purposes of trial. We believe Congress recognized that certain psychological and physical deprivations were inherent in such pretrial confinement. Article 13; *see Courtney v. Williams*, 1 M.J. 267, 271 (C.M.A. 1976); *United States v. Bayhand*, 6 U.S.C. M.A. 762, 21 C.M.R. 84 (1956). Yet, in

Article 13,[8] it expressly provided that the imposition of pretrial restraint was not for the purpose of punishment but a necessary tool for the administration of justice. *See Reed v. Ohman*, 19 U.S.C.M.A. 110, 115, 41 C.M.R. 110, 115 (1969). Furthermore, to insure against abuse of this power, it expressly limited the conditions of this confinement in accordance with its purpose. *See United States v. Bayhand, supra* at 766, 21 C.M.R. at 88. Accordingly, as a matter of law, we cannot accept appellant's unsupported assumption that pretrial confinement is punishment as intended by Congress in Article 56 or that provided for by the President in paragraph 127*c*, Manual, *supra. See also* para. 125, Manual, *supra.*

■ Appellant also asserts by necessary implication that pretrial confinement is the legal equivalent of confinement at hard labor. *See* para. 127*c*, Manual, *supra.* Traditionally, there is no support for this position as a matter of law because hard labor was not authorized to be exacted from a person in this status. Davis, *supra* at 485; Winthrop, *supra* at 125, 425–26. Moreover, in the present Uniform Code of Military Justice, confinement prior to trial may be no more rigorous than circumstances require to insure the accused's presence. *See* Article 13. The same cannot be said for confinement executed pursuant to a finally approved court-martial sentence. *See* Article 58(b), UCMJ, 10 U.S.C. § 858(b); para. 126*j*, Manual, *supra.* Accordingly, absent any showing from appellant that his pretrial confinement as a matter of fact was confinement at hard labor, his argument is without legal merit.

---

7. As a matter of military tradition, the sentence reached by the members of a court-martial was in the nature of a recommendation to the officer who convened the court. *See* W. Winthrop, *Military Law and Precedents* 390, 447 (2nd ed. 1920 Reprint). As a matter of statutory law, the sentence could not be executed until this reviewing authority acted. *Id.* at 447–450. *Cf.* nn.3 and 5, *supra.*

8. As indicated in n.3, *supra*, Article 13 was amended recently. This amendment is not pertinent to the present case. Article 13 as origi-

nally enacted was derived from Article of War 16 (1948). *See* Hearings on H.R. 2498 Before a Subcommittee of the House Armed Services Committee, 81st Cong., 1st Sess., reprinted in Index and Legislative History, Uniform Code of Military Justice [hereafter cited Index and Legislative History] 916–17 (1949), and S.Rep. 486, 81st Cong., 1st Sess. 10 (1949). The earlier provision was enacted by Congress at the request of Congressman Fulton as a floor amendment to H.R. 2575, the Elston Bill of 1948. *See* 94 Cong.Rec. 184 (1948).

As noted earlier, appellant asserted that his adjudged and approved sentence was illegal because the military judge failed to particularly instruct the members to consider his pretrial confinement in arriving at an appropriate sentence.[9] *See* para. 76a(2), Manual, *supra.* In addition, we note that the staff judge advocate likewise failed to particularly advise the convening authority that he should consider this pretrial confinement in approving an appropriate sentence.[10] Para. 88b, Manual, *supra.* We agree that error occurred in the manner in which this matter was presented to these sentencing bodies. *See generally United States v. Wheeler,* 17 U.S.C.M.A. 274, 38 C.M.R. 72 (1967).

In resolving this question, we believe that it is necessary to appreciate the developing role pretrial confinement has played as a matter of law in the determination of an appropriate sentence for a servicemember. Prior to enactment of the Uniform Code of Military Justice, pretrial confinement was a matter in mitigation to be considered by a reviewing authority in his action on sentence. *See* para. 87b, Manual for Courts-Martial, U. S. Army, 1949; sec. 469, Naval Courts and Boards, 1937; para. 87b, Manual for Courts-Martial, U. S. Army, 1928; para. 401, Manual for Courts-Martial, U. S. Army, 1921; para. 401, Manual for Courts-Martial, U. S. Army, 1917. *See also* Davis, *supra* at 157–58; Winthrop, *supra* at 120, 426, 475. It was considered highly irregular and impermissible for the members to consider pretrial confinement in reaching an appropriate sentence. *See* Davis, *supra;* Winthrop, *supra* at 393, 402.[11] However, they could recommend to the reviewing authority that he grant clemency to the accused on this basis. Davis, *supra;* Winthrop, *supra* at 443.

After World War II and during the period in which the Uniform Code of Military Justice was drafted, Professor Arthur J. Keefe of Cornell Law School emerged as a leading proponent for change in the manner in which pretrial confinement was considered in the military justice system. *See* Report of Navy General Court-Martial Sentence Review Board (Keefe Report) 185 (Jan.1947); there Keefe asserted that pretrial confinement should not simply be a matter of clemency to be considered by the convening authority but rather should be "properly one of the sentence factors that the court should consider in exercising its discretion as to length of sentence."[12] In 1951, the President in promulgating the Manual for Courts-Martial provided that pretrial confinement was a matter to be brought to the attention of the court-martial and to be considered by it in adjudging

**9.** The military judge instructed the members: In determining an appropriate sentence, you should consider the facts and circumstances surrounding the commission of the offense of which the accused has been found guilty in this trial. *Additionally, you must consider all matters in extenuation and mitigation properly before the court. In this case, factors you should take into consideration include the accused's awards and decorations, that is, the Good Conduct Medal, the National Defense Service Medal, and the Air Force Longevity Service Award; the accused's duty performance and efficiency; and the opinions of his superiors.* On the other hand, there's been evidence presented by the prosecution in aggravation which might—which you might evaluate as militating against or lessening the favorable aspects of the evidence presented on behalf of the accused. Such evidence consisted of the accused's prior court-martial conviction. *In summary, you should consider all the facts and circumstances of this case as extenuated and miti-*

*gated by other matters presented for your consideration.* It is for you to determine the relative importance of the evidence by the exercise of your good judgment and common sense.

(Emphasis added.) No particular mention was made of the time appellant spent in pretrial confinement.

**10.** The Staff Judge Advocate stated in the Personal Data Section of his advice that appellant spent 143 days in pretrial confinement and, without mentioning this pretrial confinement, recommended that the sentence be approved.

**11.** Winthrop notes that, although irregular, it was not uncommon for members of a court-martial to award a lenient sentence on this basis. *See* Winthrop, *supra* at 442.

**12.** *See also* Keefe and Moskin, *Comments, Codified Military Injustice,* 35 Cornell L.Q. 151, 160 (1949); Index and Legislative History, *supra* at 839 (House) and 250 (Senate).

an appropriate sentence. *See* para. 75*b*(1), Manual for Courts-Martial, United States, 1951. Moreover, pretrial confinement was still to be considered by the convening authority in his action on the sentence. *See* para. 88*b*, 1951 Manual. Such an abrupt change in the procedures of military law cannot be gainsaid.

■ The Court of Military Review stated in its order affirming appellant's sentence that it considered his assignment of errors and found no error materially prejudicial to his substantial rights was committed. The Government in its brief had earlier argued that the matter of pretrial confinement had been sufficiently brought to the attention of the court members by defense counsel's closing argument and the trial judge's general instruction to consider all matters in extenuation and mitigation. In view of the importance placed by the President on this sentencing factor and the requirement in *United States v. Wheeler, supra*, that the military judge particularly delineate the matters which the members should consider in their deliberation, we hold the military judge's rote instructions in the present case were inadequate as a matter of law.

The Court of Military Review decision is not necessarily inconsistent with our holding of legal error. *See United States v. Vasquez*, 9 M.J. 517 (A.F.C.M.R.1980). It can be read to simply say that the error asserted by appellant was not substantially prejudicial to him. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a). Such an assessment of prejudice we hold also erroneous as a matter of law in the present case.

■ Our previous discussion of the treatment of pretrial confinement as a matter of military law makes clear that the convening authority traditionally considered this fac-

tor in his decision to approve the sentence. *See* Winthrop, *supra* at 401–03, 473–75. The present Manual for Courts-Martial does not eliminate this requirement even though it now also provides for the consideration of this factor by the court-martial. *See* para. 88*b*, 1969 Manual. As indicated earlier, the staff judge advocate in the post-trial review also did not particularly advise the convening authority as to the need to consider this factor in his decision. This error compounds the error of the trial judge. There is no indication in the record of trial and allied papers that the Court of Military Review considered this matter in its assessment of prejudice. In addition, it is uncontroverted that appellant received the maximum authorized punishment to confinement at hard labor in this case. *See United States v. Wheeler, supra* at 278, 38 C.M.R. at 76. In view of these circumstances, we hold that the Court of Military Review's assessment of prejudice was erroneous as a matter of law. *See United States v. Dukes*, 5 M.J. 71 (C.M.A.1978).

The decision of the United States Air Force Court of Military Review is affirmed as to the findings, but because the maximum authorized punishment which was adjudged, approved, and affirmed in this case is erroneous as a matter of law, its decision as to sentence is reversed. Since the error concerned only a portion of the sentence to confinement at hard labor, such error can be cured by reducing the affirmed sentence by 143 days. Accordingly, the record of trial is returned to the Judge Advocate General of the Air Force for resubmission to the Court of Military Review to reassess the sentence in this case and at the very least reduce the sentence to confinement as indicated.[13]

---

13. Appellant has not incorporated in his petition for direct review an application for a writ of habeas corpus challenging the computation of his period of parole. *See United States v. Richardson*, 8 M.J. 157, 158 (C.M.A.1980). It is asserted in a brief of the amicus curiae that this incorrect sentence action did affect his eligibility for parole. *See United States v. Heard*, 3 M.J. 14, 23 (C.M.A.1977); *United States v. Larner*, 1 M.J. 371 (C.M.A.1976). However, as

indicated earlier, appellant has already been granted parole. In view of these facts, we need not entertain the question whether military prison authorities were required by DOD Instr. 1325.4 (Oct. 7, 1968) to administratively credit appellant in the computation of his sentence for the 143 days he spend in pretrial confinement. *See Lee v. United States*, 400 F.2d 185 (9th Cir. 1968). In any event, the relief ordered by this Court should render this question moot.

EVERETT, Chief Judge (concurring in the result):

I

For many decades the standard charge sheet used in connection with courts-martial has contained at the bottom of the first page a place for the entry of data as to restraint. *See* Appendix 5, Manual for Courts-Martial, United States, 1969 (Revised edition); Appendix 5, Manual for Courts-Martial, United States, 1951. According to the Manual for Courts-Martial, after findings of guilty have been announced, trial counsel shall present service data from the charge sheet, including "the duration and nature of any restraint imposed [upon the accused] before trial". Para. 75*b*, 1969 Manual, *supra*; para. 75*b*, 1951 Manual, *supra*. Furthermore, "[i]n the exercise of its discretion· in adjudging a sentence, the court may consider evidence when properly introduced respecting the character of the accused as given in formal discharges, the number and character of previous convictions, that a guilty plea is a mitigating factor, *the nature and duration of any pretrial restraint,* any evidence of mental impairment or deficiency (123), and the circumstances extenuating, mitigating or aggravating the offense." Para. 76*a*(2), 1969 Manual, *supra*. (Emphasis added). Similar language appeared in the 1951 Manual, *supra*.[1]

Although the language concerning pretrial restraint is substantially the same in the 1969 and 1951 Manuals, a major change in Federal law occurred in the interval between promulgation of the two Manuals. In 1966, as part of the Bail Reform Act, Congress directed that credit be given on a sentence for time spent in pretrial confinement. 18 U.S.C. § 3568. In so doing, Con-

gress recognized that, although in legal theory pretrial confinement may not constitute punishment, it often seems almost the same from the standpoint of the person confined and may have much the same effect upon him.

Since 18 U.S.C. § 3568 contains an express exception for "an offense triable by court-martial," Congress left the President free to adopt or reject the new rule applicable to Federal civilian trials. Unfortunately, in promulgating the 1969 Manual, the President continued to authorize the sentencing authority to "consider" pretrial restraint, but failed to specify whether he had elected to apply the newly prescribed rule for trials in the Federal District Courts—whereunder full credit is allowed on the sentence for pretrial confinement. The Armed Services have assumed that by retention of language from the 1951 Manual, the President evidenced an intent to continue the earlier practice which denied credit for pretrial confinement. On the other hand, court members—at least if they are aware of the rule used in Federal courts—might assume that an accused will receive credit on his sentence for pretrial confinement and that this is the reason for informing them as to the time spent in pretrial confinement. In that event, the members may adjudge a sentence which includes more confinement than they would impose if they believed that no credit would be allowed for pretrial confinement. Accordingly, court members should be advised by the military judge whether the accused will receive any credit on a sentence to confinement for time spent in pretrial confinement; I agree with the principal opinion that the absence of an instruction in this regard constitutes error. In the present case, the error was prejudicial.[2]

---

1. *See* paragraph 76a(2), which provides that "the court should consider ... the nature and duration of any pretrial restraint." The problem arises if the members proceed on an erroneous premise as to whether credit for pretrial confinement will be given on the sentence adjudged.

2. I am not convinced that the President intended for courts-martial to be bound by the Feder-

al rule or that service regulations have adopted the rule that pretrial confinement must be credited on sentence. However, as long as the court members are instructed either that the pretrial confinement will be credited on a sentence to confinement or that it will not be—and that instruction is followed later in computing the release date—I do not believe that an ac-

## II

For another more fundamental reason I also must concur in reversing the judgment of the court below. As evidenced by our Court's concern about pretrial confinement, *see, e.g., United States v. Lynch,* 13 M.J. 394 (C.M.A.1982); *United States v. Heard,* 3 M.J. 14 (C.M.A.1977); *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), we have recognized implicitly that confinement while awaiting trial is not completely dissimilar from confinement after sentence is adjudged. Congressional recognition of this same fact is reflected not only in the Bail Reform Act of 1966, which requires credit on sentence for pretrial confinement, but also in the language of Article 13 of the Uniform Code of Military Justice, 10 U.S.C. § 813, which prescribes that no one pending trial "may be subjected to punishment or penalty *other than* arrest or *confinement* upon the charges pending against him." (Emphasis added). Moreover, prior to its recent change,[3] Article 13 placed in the same class all persons "being held for trial or the result of trial," so it grouped those in pretrial confinement with persons who were not considered "sentenced" prisoners but under Article 57(b), UCMJ, 10 U.S.C. § 857(b), were entitled to credit for time spent in post-trial confinement while awaiting the results of appellate review.

In short, criminal justice—both civilian and military—has recognized that, while pretrial confinement may be necessary to protect certain well-defined and circumscribed societal interests, *see United States v. Heard, supra,* the fact remains that significant adverse consequences are inflicted on the persons confined.[4] Accordingly—absent an explicit statement to the contrary in the Manual—I infer that, when the President prescribed the maximum confinement that may be imposed as punishment for an offense, he did not intend to draw a distinction between pretrial and post-trial confinement. Indeed, since a different interpretation would tend to produce an unfair result, it should be rejected unless its adoption is compelled by Manual language.

Secondly, the provisions contained in the Bail Reform Act of 1966 reveal a congressional rejection of technical distinctions between pretrial and post-trial confinement in determining what punishment is imposable. Since 18 U.S.C. § 3568, which requires that credit for pretrial confinement be given in all instances, contains an exception for courts-martial, it is not binding on the President when he prescribes maximum punishments. Nonetheless, since under this statute a civilian defendant in a Federal District Court would not be subject to aggregate imprisonment for a period greater than the maximum which Congress prescribed as punishment for his crime, I believe that its provisions should be taken into account in construing the Table of Maximum Punishments prescribed by the President.

The 1951 Manual for Courts-Martial did not specify whether allowance for pretrial confinement was required in applying the Table of Maximum Punishments. Thus, even then, an ambiguity existed as to what the President intended. Congress' enactment of 18 U.S.C. § 3568 in 1966 made this ambiguity more obvious. However, when the Manual was revised in 1969, no effort was made to resolve the ambiguity—despite ample opportunity to do so. The resulting uncertainty about the intent of the Table of Maximum Punishments should be resolved in favor of the accused when determining whether his pretrial confinement should be taken into account in determining the maxi-

cused will be prejudiced. This is especially true since military justice does not utilize minimum sentences as do civilian courts. *See* (1960) U.S.Code Cong. and Ad.News 3288, 3289. Of course, in a trial by judge alone the intention of the judge with respect to pretrial confinement should also be made manifest.

3. Act of November 20, 1981, Pub.Law No. 97–81, 95 Stat. 1085; H.R. 4792, H.R.Rep.No. 97–306 97th Cong. 1st Sess. 4–5 (1981).

4. In the Air Force an accused awaiting trial is treated in much the same manner as a sentenced prisoner. *See United States v. Fortenberry* (A.C.M. 23073, July 29, 1981) (Miller, J., dissenting).

mum aggregate confinement to which he is subject.[5]

Finally, the Table of Maximum Punishments should be construed as I have suggested in order to avoid constitutional issues.[6] Admittedly, since appellant's pretrial confinement was not imposed pursuant to a court sentence, the Supreme Court's decision in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)—requiring that credit be given for confinement under a sentence which was later set aside—can be readily distinguished from the case at bar, where pretrial confinement did not result from a court sentence. However, unless the Manual is interpreted to prohibit aggregate confinement—pretrial and post-trial—which exceeds the maximum stated in the Table of Maximum Punishments, equal protection issues arise.

In the first place, servicemembers like appellant have been singled out in legal effect from all others convicted of the same offense. Because of the fortuitous circumstance of pretrial confinement, the former group will spend an aggregate time in confinement greater than that which is specified by the Table of Maximum Punishments; the latter group will not. The rational basis for the different outcomes is questionable.[7] Second, the failure to allow

credit under these circumstances discriminates against Davidson in relation to any defendant, military or civilian, tried in a Federal District Court, who because of the provisions of the Bail Reform Act would not be compelled to serve more than the maximum punishment authorized by the statutes under which they were convicted.[8]

While a person in pretrial confinement who is ultimately acquitted is at a disadvantage in relation to other defendants who are not placed in pretrial confinement and are acquitted, that disadvantage has no ready remedy. However, in the present case the remedy is simple and obvious—to credit appellant with that portion of the pretrial confinement which would cause his aggregate confinement to exceed the ceiling established by the Table of Maximum Punishments. In my view, the Table should be interpreted in this manner, and so, since the court-martial sentenced Davidson to the maximum confinement allowed by the Table, he should be credited with all of his pretrial confinement.

COOK, Judge (concurring in part, dissenting in part):

For the most part, I concur with the excellent opinion of my Brother Fletcher, as his opinion ably and accurately traces the evolution of the treatment accorded pretrial

---

5. *Cf. United States v. Enmons*, 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973); *United States v. Campos-Serrano*, 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971); and *United States v. Baker*, 18 U.S.C.M.A. 504, 40 C.M.R. 216 (1969). Ambiguous penal statutes generally are interpreted in favor of the defendant.

6. Like ambiguous statutes, ambiguous Manual provisions should be construed in a manner that would avoid constitutional issues. *Cf.* 2A Sutherland, *Statutes and Statutory Construction* § 45.11 (4th ed. 1973).

7. The law is not similarly offended when it is simply the jurisdictional limit of a special court-martial—rather than the Table of Maximum Punishments—which is exceeded by a combination of pretrial confinement and confinement adjudged in a sentence. Presumably, the nature and extent of pretrial confinement was considered by the convening authority when he decided to refer the case for trial by a court of limited jurisdiction.

8. This discrimination is all the greater if the accused is prosecuted under the third clause of Article 134 of the Uniform Code 10 U.S.C. § 934—which has the general effect of allowing prosecution in a court-martial under other Federal penal statutes. In that event, the servicemember sentenced to the maximum confinement allowed by the applicable penal statute will receive no credit for pretrial confinement, while a civilian convicted of violating the same statute would receive full credit for pretrial confinement if sentenced to the maximum punishment authorized by the statute.

Admittedly, the servicemember's plight is mitigated by the circumstance that he probably will be in a pay status while in pretrial confinement. However, that is not enough, in my view, to offset the discrimination as to aggregate loss of liberty if pretrial confinement is not credited.

**90**

confinement in the military justice system. My disagreement with the principal opinion concerns the remedy announced. Since the error was committed first at the trial level and not cured by the convening authority, I believe that the proper remedy is to return the case to the convening authority for a rehearing on the sentence. Para. 92a, Manual for Courts-Martial, United States, 1969 (Revised edition). Only in this way may we be assured that the accused receives proper consideration of the effect of his pretrial confinement on the deliberations in arriving at an appropriate sentence. I write separately primarily to take issue with certain of the positions advanced by Chief Judge Everett in his opinion concurring in the result.

I

As Judge Fletcher pointed out, military law has always treated pretrial confinement as a matter in extenuation and mitigation, and indeed only recently has pretrial confinement been brought to the attention of the court-martial. Thus, the Manual for Courts-Martial provides that, except where mandatory punishments are prescribed, "the determination of a proper punishment for an offense rests within the discretion of the court *subject to the limitations prescribed in chapter XXV* [Punishments] *and by the article violated.*" Para. 76a(1), Manual, *supra* (emphasis added). Further, it is provided that the court, "[i]n the exercise of its discretion . . . *may consider* . . . the nature and duration of any pretrial restraint." Para. 76a(2), Manual, *supra* (emphasis added). In other words, the court-martial *may, but need not,* consider an accused's pretrial confinement in arriving at a sentence—"consider" being defined as: "to reflect on: think about with a degree of care or caution." Webster's Third New International Dictionary, Unabridged 483 (1961). Otherwise, the court's discretion is limited only by the maximum punishments established by the Uniform Code of Military Justice and the Manual for Courts-Martial.

Likewise, it is provided that "[t]he convening authority *should consider* as a basis for approving only a part of a legal sentence all matters relating to clemency, *such as long confinement pending trial.*" Para. 88b, Manual, *supra* (emphasis added). Thus, the convening authority also is *urged, but not required,* to "consider" an accused's pretrial confinement. However, he is not encouraged to consider any and every period of pretrial confinement, but only *long* pretrial confinement. A clearer procedure for treating pretrial confinement and a clearer refutation of the contention that the President intended pretrial confinement mechanically to be credited against adjudged punishment is difficult for me to conceive!

Nevertheless, the Chief Judge finds that because "[t]he 1951 Manual for Courts-Martial did not specify whether allowance for pretrial confinement was required in applying the Table of Maximum Punishments" an "ambiguity existed" which was not resolved by the 1969 revision. 14 M.J. 81, 88. I am at a loss to understand this conclusion. If the Chief Judge suggests that the 1969 Manual failed to provide for the treatment to be accorded pretrial confinement, he is simply wrong. *See* paras. 76a(1) and (2) and 88b, 1969 Manual, *supra.* Surely the Chief Judge does not suggest that the *President,* in perpetuating a long-standing and heretofore unquestioned practice (*see United States v. Clark,* 17 U.S.C. M.A. 26, 27 n.1, 37 C.M.R. 290, 291 n.1 (1967); *United States v. Larner,* 1 M.J. 371, 374 n. 11 (C.M.A.1976); and the authorities cited by Judge Fletcher in the principal opinion), continued an "ambiguity" into the 1969 Manual by failing to advert to a specifically inapplicable Act of Congress! *

Whatever the Chief Judge's rationale, I believe he has violated one of the most fundamental principles of statutory construction, *i.e.,* that language clear and unambiguous on its face is accorded its plain meaning. *See* 2A Sutherland, *Statutes and Statutory Construction* § 45.02, *et seq.* (4th ed. 1973). Thus by ignoring altogether or

* The Bail Reform Act of 1966, 18 U.S.C. § 3568.

by ascribing hitherto unknown obscurity to ordinary language, the Chief Judge would overrule both the President of the United States and the Congress, without the slightest indication that either desired change. For example, I take it to be irrefutable that Congress, by specifically exempting the military from the reach of the Bail Reform Act, consciously intended to leave undisturbed the prevailing military practice. As for the President, the only change relevant here between the 1951 Manual and the 1969 Manual is that the admonishment that the court-martial "should consider" the nature and extent of pretrial confinement has been softened to read, "may consider." *Compare* para. 76a(2), Manual for Courts-Martial, United States, 1951, *with* para. 76a(2), Manual for Courts-Martial, United States, 1969 (Revised edition). If anything, this change represents even less presidential desire that the court-martial feel compulsion to make allowance for or to "credit" confinement pending trial.

I take no position regarding my own preferences in this matter; I merely dispute the assertion that the 1969 Manual fails to address pretrial confinement in unambiguous terms.

## II

In addition, I do not accept the Chief Judge's conclusion that "equal protection issues arise" unless pretrial confinement invariably be credited against sentence. 14 M.J. at 89. In the first place, Congress at least was obviously of the opinion that non-credit for pretrial confinement did not violate the Constitution, else they would not have exempted the military. Second, several federal circuits have indicated that, absent a statute, sentence credit for pretrial confinement is within the discretion of the trial judge and is not required by the Constitution. *Lewis v. Cardwell*, 609 F.2d 926 (9th Cir. 1979); *Matthews v. Dees*, 579 F.2d 929 (5th Cir. 1978). Admittedly, other circuits hold that the Equal Protection Clause requires credit for pretrial custody. However, these courts have based their decisions on a factor not present in the military justice system, *i.e.*, the effect of wealth on a defendant's ability to "make bail." *Johnson v. Prast*, 548 F.2d 699 (7th Cir. 1977); *King v. Wyrick*, 516 F.2d 321 (8th Cir. 1975); *United States v. Gaines*, 449 F.2d 143 (2nd Cir. 1971).

Absent wealth as a consideration, I perceive no "suspect classification" or "fundamental interest" in appellant's circumstance such that, under Equal-Protection analysis, "strict scrutiny" is required. Thus, the Equal Protection Clause is offended here only if the distinction between the treatment accorded pretrial confinees and non-confinees is arbitrary and lacking reasonable basis. *See Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). However, as Judge Fletcher has pointed out, pretrial confinement is seen in the military purely as a matter of necessity, not punishment, and is employed exclusively where a servicemember has demonstrated by his conduct that he cannot be permitted to remain at large. *United States v. Heard*, 3 M.J. 14 (C.M.A.1977). Such necessity I regard as the obverse of arbitrariness and unreasonableness. Thus, if a pretrial confinee serves in the aggregate more confinement than a non-pretrial confinee, it is reasonable, not arbitrary. Barring some contrary indication from the Supreme Court, the ultimate arbiter of the Constitution, I am satisfied that credit for pretrial confinement is not required in the military.