UNITED STATES

v.

Senior Airman Matthew J. MILLER,
United States Air Force.

ACM 34031.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 17 Nov. 1999.

Decided 4 Feb. 2002.

Appellate Counsel for Appellant: Colonel James R. Wise, Lieutenant Colonel Timothy W. Murphy, and Major Stephen P. Kelly.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Lance B. Sigmon, and Major Bryan T. Wheeler.

Before BURD, Senior Judge, BRESLIN, and HEAD, Appellate Military Judges.

## OPINION OF THE COURT

BURD, Senior Judge:

On 16–17 November 1999, the appellant was tried by general court-martial composed of officer members at Edwards Air Force Base (AFB), California. Consistent with his pleas, he was found guilty of physically controlling a vehicle while his blood alcohol level was above the legal limit, in violation of Article 111, UCMJ, 10 U.S.C. § 911, and distributing and possessing methamphetamine, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. His adjudged and approved sentence consists of a bad-conduct discharge and reduction to E–3.

The appellant raises two issues on appeal. We will address each issue individually. We find no prejudicial error and affirm. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

Pretrial Confinement Credit Instruction

The appellant claims it was prejudicial error for the military judge to fail to give a defense requested instruction to consider as a matter in mitigation the time the appellant spent in pretrial confinement. We conclude that even if it was error for the trial judge to not give the requested instruction, the error was harmless. Art. 59(a), UCMJ.

The appellant was arrested by civilian authorities for driving under the influence of alcohol and placed in confinement for 3 days. This incident formed the basis for the Art. 111, UCMJ, allegation.

At the court-martial, after the military judge finished his instructions to the members, he asked counsel for both sides, in the presence of the court members, whether they had any objections to his instructions or requests for additional instructions. The following exchange occurred:

Assistant Trial Counsel: None from the Government, Your Honor.

Assistant Defense Counsel (ADC): Yes, Your Honor, the Defense requests that the pretrial confinement credit instruction be given.

Military Judge: I'm going to provide that independent of whatever happens.

ADC: Okay.

The trial judge did not give the instruction. During a session held pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a), while the members were deliberating on what sentence to impose, the parties agreed that the appellant was entitled to 3 days' pretrial confinement credit for this period of civilian confinement. Nothing else was said on the record about the instruction.

 A trial judge has broad discretion to decide what instructions to give court members, and we review that discretion for abuse. *United States v. Damatta–Olivera*, 37 M.J. 474 (C.M.A.1993). The rule applies

to sentencing instructions as well. *United States v. Simmons*, 48 M.J. 193 (1998). In deciding whether there has been abuse, we examine the instructions as a whole to see if the instructions sufficiently address the issues and facts presented by the evidence. "The question of whether a jury was properly instructed is a question of law, and thus, our review is *de novo.*" *United States v. Snow*, 82 F.3d 935, 939 (10th Cir.1996), *quoted in United States v. Maxwell*, 45 M.J. 406, 424 (1996).

> The test to determine if denial of a requested instruction constitutes error is whether (1) the charge is correct; (2) "it is not substantially covered in the main charge"; and (3) "it is on such a vital point in the case that the failure to give it deprived defendant of a defense or seriously impaired its effective presentation."

*Damatta–Olivera*, 37 M.J. at 478 (quoting *United States v. Winborn*, 34 C.M.R. 57, 62, 1963 WL 4756 (C.M.A.1963)), *quoted in Simmons*, 48 M.J. at 195.

The form instruction for when an accused is entitled to pretrial confinement credit is as follows:

> In determining an appropriate sentence in this case, you should consider the fact that the accused has spent _____ day(s) in pretrial confinement. The day(s) the accused spent in pretrial confinement will be credited against any sentence to confinement you may adjudge. This credit will be given by the authorities at the correctional facility where the accused is sent to serve (his)(her) confinement, and will be given on a day-for-day basis.

Department of the Army Pamphlet 27–9, *Military Judges' Benchbook*, Instruction 2–5–22 (1 Apr 2001).[1]

While we could properly dispose of the issue presented without much discussion, we take the opportunity to delve briefly into the history of the instruction and the salient law regarding the issue of credit for pretrial restraint and pretrial punishment. This will place the issue before us in proper context and facilitate understanding our view that

1. The instruction, quoted from the latest revision of the *Military Judges' Benchbook*, is identical, in

material respects, to the version in effect at the time of the appellant's trial.

the giving of the instruction should rest within the sound discretion of the trial judge. *See generally United States v. Rock*, 52 M.J. 154 (1999) and cases cited therein. *See also United States v. Greaves*, 46 M.J. 133, 139 (1997).

■ There has been an evolution in the treatment of pretrial restraint. Relatively late in this evolution our superior court decided that pretrial confinement served warranted credit against post-trial confinement. *See United States v. Allen*, 17 M.J. 126 (C.M.A.1984). Our superior court then expanded the circumstances justifying credit. *See Rock* and cases cited therein. There also emerged a requirement to instruct the court about pretrial confinement when the accused had served such. *United States v. Davidson*, 14 M.J. 81, 85 (C.M.A.1982). But this requirement to instruct preceded the requirement to give credit. And our superior court in *Allen*, while establishing a requirement for day-for-day credit for pretrial confinement, endorsed, without explanation, a continuing requirement to instruct. *Allen*, 17 M.J. at 127 (citing *Davidson*).

As we have said earlier, current practice generally gives the trial judge broad discretion to decide what instructions to give. *Simmons; Damatta–Olivera; see also Greaves*, 46 M.J. at 139. This raises a substantial question whether the provisions in *Allen* and *Davidson*, which appear to require the instruction, retain vitality. *Cf. United States v. Bigelow*, 55 M.J. 531, 534–36 (A.F.Ct.Crim.App.2001), *pet granted*, 56 M.J. 206 (2001) (system of military justice sufficiently mature to permit trial judges discretion whether to give accomplice instruction).

Early in the history of our military jurisprudence, before enactment of the Uniform Code of Military Justice, pretrial confinement was generally not a matter to be considered at trial, but rather upon review as a matter in mitigation. *Davidson*, 14 M.J. at 85 and authorities cited therein. Pretrial restraint of an accused was not a matter kept from the court, but rather would have been common knowledge because the early practice was to restrain all personnel awaiting

trial. William Winthrop, *Military Law and Precedents* 110 (2d ed.1920 reprint).

Later, with enactment of the UCMJ and promulgation thereafter of the *Manual for Courts–Martial, United States, 1951*, pretrial confinement became a matter to be brought to the attention of the court for consideration in determining an appropriate sentence. *Davidson*, 14 M.J. at 85–86 (citing *Manual for Courts–Martial, United States, 1951*, ¶ 75b(1)).[2] But, pretrial confinement also remained a matter for the convening authority to consider when taking action on the sentence. *Id.* at 86 (citing *Manual for Courts–Martial, United States, 1951*, ¶ 88b). These latter rules have not substantially changed with the passage of time; the duration and nature of any pretrial restraint is a matter to be presented to the court during presentencing by the prosecution and the convening authority should consider pretrial confinement when determining what sentence should be approved. Rule for Courts–Martial (R.C.M.) 1001(b)(1) and 1107(d)(2) Discussion.

Generally, instructions to the court in the early years after enactment of the UCMJ continued to be heavily influenced by historical practice. Notably, until 1957, the court members were permitted to use the *Manual* as a reference throughout the trial and to take it with them for use in their deliberations. *See United States v. Rinehart*, 24 C.M.R. 212, 216–20, 1957 WL 4746 (C.M.A. 1957); *United States v. Boswell*, 23 C.M.R. 369, 1957 WL 4499 (C.M.A.1957). In a pamphlet discussing the 1951 *Manual* it was said: "In lieu of giving instructions on a certain point, the law officer properly may invite the court's attention to appropriate portions of the manual and note in the record that a copy of the manual is available for the court's examination." *Legal and Legislative Basis, Manual for Courts–Martial, United States, 1951*, 76.

With the *Manual* available during the trial and in deliberations, court members would have been able to read for themselves provi-

---

2. This "abrupt change in the procedures" was the foundation for the Court's creation of a re-

quirement for an instruction on pretrial confinement. *See Davidson*, 14 M.J. at 85–86.

sions on the basis for determining a sentence, including the following:

> In the exercise of its discretion in adjudging a sentence, the court should consider evidence contained in the record respecting the character of the accused as given in former discharges, the number and character of previous convictions, **the nature and duration of any pretrial restraint,** and the circumstances extenuating or aggravating the offense.

*Manual for Courts–Martial, United States, 1951,* ¶ 76a (emphasis added). Judge Homer Ferguson expounded on why the practice of allowing the court members to use the *Manual* was to end:

> Prior to the Code courts-martial were neither instructed on the elements of the offense charged nor the principles of law applicable to the case. The deliberations of the court were in camera and a genuine need then existed for the use of the Manual by the court members in determining the law to be applied. However, with the advent of the Uniform Code of Military Justice many of the problems which previously existed under the old system disappeared. Congress created the role of law officer and fashioned him in the image of a civilian judge. He was charged with the responsibility of instructing the court on the elements of the offense and the applicable principles of law in order that informed and intelligent findings and sentence could be reached. In a word, he was made a fountainhead of the law in the court-martial scheme of things. The sum total of these and other remedial changes inaugurated by the Code was to bring court-martial procedure, wherever possible, into conformity with that prevailing in civilian criminal courts. We believe that military law under the Code has come of age and the time has come when the use of the Manual by the court-martial must end.

*Rinehart,* 24 C.M.R. at 218.

During this time, a fundamental concern regarding instructions was the question: To what extent was the law officer required to instruct the court, particularly on sentencing issues, beyond the statutorily required instructions? *See United States v. Wheeler,* 38 C.M.R. 72, 1967 WL 4375 (C.M.A.1967) and cases cited therein. As our superior court said in *Wheeler:*

> Summed up, then, the whole thrust of this Court's opinions regarding pre-sentence instructions has been to require the law officer to delineate the matters which the court-martial should consider in its deliberations. While the law officer has some discretion in this regard, we have expressly noted that such "ought not to have the same restraining effect during the sentence procedure." *United States v. Cook,* [29 C.M.R. 395, 397, 1960 WL 4522 (1960)]. This is particularly true in light of the range of punishments to which a military accused may be subjected under the Code—"as a court-martial may direct"— when compared to those imposable by a civil court. In short, we reiterate here the duty of the law officer to tailor his instructions on the sentence to the law and the evidence, just as in the case of his prefindings advice.

*Wheeler,* 38 C.M.R. at 75.

Although *Wheeler* indorsed the view that the law officer had greater discretion on instructions on sentencing than those on findings, its legacy has been the practice of counsel (primarily defense counsel) requesting and trial judges listing a litany of mitigating and aggravating factors flowing from the facts and circumstances of the case. We have previously said this is not required; that "[i]t is sufficient to instruct the members to consider all the facts in the case, and then reference, in general, any other applicable evidence, such as any extenuation or mitigation; the accused's background; his character, and his record in the service for good conduct and efficiency." *United States v. Pagel,* 40 M.J. 771, 780 (A.F.C.M.R.1994), *aff'd on other grounds,* 45 M.J. 64 (1996), *cited in United States v. Hopkins,* 55 M.J. 546, 550 (A.F.Ct.Crim.App.2001), *pet. granted,* 56 M.J. 201 (2001).

*Wheeler* is significant on the question before us regarding an instruction on pretrial confinement credit because our superior court cited *Wheeler* as authority in *Davidson* for the conclusion that it was error for the military judge to not particularly instruct the

court members to consider the accused's pretrial confinement in arriving at an appropriate sentence. *Davidson,* 14 M.J. at 85. As we alluded to earlier, this recognized service of pretrial confinement as a matter in mitigation at trial. *But see Davidson,* 14 M.J. at 89, 90 (Cook, J., concurring in part, dissenting in part) (military law has always treated pretrial confinement as a matter in extenuation and mitigation).

But with the decision by our superior court in *Allen* to require day-for-day credit for pretrial confinement, the instruction was modified to include reference to the entitlement. This led to the argument that the instruction invites court members to adjudge additional confinement to nullify such credit. *See United States v. Balboa,* 33 M.J. 304 (C.M.A.1991). Therein, our superior court dismissed the argument, saying, "the instructions as a whole suggest that pretrial confinement is a matter of mitigation and that the members may consider even credited pretrial confinement in fashioning a less severe sentence." *Id.* at 307 (citing *Davidson*). The Court went on to say that nothing "precludes a court from attempting to fashion an appropriate sentence of confinement in view of time actually served." *Id.* at 307. Thus today we have the form instruction previously quoted. Department of the Army Pamphlet 27–9, *Military Judges' Benchbook,* Instruction 2–5–22 (1 Apr 2001).

As recently as 1997, on the question of the appropriateness of a collateral-consequences instruction, our superior court has discussed the issue of the trial judge's discretion in the context of *Wheeler.*

> Whether a collateral-consequences instruction is appropriate in an individual case depends upon the particular facts and circumstances of that case. Discretion is given to the military judge to determine whether such an instruction is appropriate, but that discretion is not unbridled. *See* [*Wheeler*]. It must be exercised in light of correct principles of applicable law, as applied to the particular facts and circumstances of each case.

*Greaves,* 46 M.J. at 139 (citations omitted). We see no reason why this reasoning ought not to be applied to questions regarding the appropriateness of instructing on pretrial restraint and any credit that might apply.

We now turn specifically to apply the above principles to this case. We are unable to conclude from the record what the military judge meant when he responded to the defense counsel's request for the instruction, "I'm going to provide that independent of whatever happens." Likewise, we can only speculate what the defense counsel meant by the response, "Okay." Therefore, we are unwilling to conclude, as the appellee suggests, that the appellant withdrew the request for the instruction. But, the record is clear that the military judge did not instruct the members on the fact that the appellant had served 3 days' pretrial confinement.

Under an abuse of discretion standard, we decline to hold that the military judge abused his discretion by failing to give the requested instruction. While we conclude the requested instruction was a correct statement and it was not substantially covered by the instructions given, we cannot say, "it is on such a vital point in the case that the failure to give it deprived [the appellant] of a defense or seriously impaired its effective presentation." *Damatta–Olivera,* 37 M.J. at 478 (quoting *United States v. Winborn,* 34 C.M.R. 57, 62, 1963 WL 4756 (C.M.A.1963)), *quoted in Simmons,* 48 M.J. at 195. The simple fact of having served 3 days in pretrial confinement, without additional facts that would suggest the conditions of the confinement were unusually harsh, is not such a vital point that the failure to give the requested instruction deprived him of a defense or seriously impaired presentation of his sentencing case.

■ Even if the instruction was required, we find the failure to give it harmless. Art. 59(a), UCMJ. The court members were aware the appellant served three days pretrial confinement.[3] Moreover, they sentenced him to no confinement.

---

**3.** The 3 days pretrial confinement was a fact included in Prosecution Exhibit 2, Personal Data Sheet.

## The Staff Judge Advocate's Recommendation

The appellant claims the staff judge advocate (SJA) failed to advise the convening authority on the 3 days' pretrial confinement the appellant served, and that this failure justifies setting aside the action of the convening authority and returning the record for new post-trial processing. We disagree.

Rule for Courts–Martial (R.C.M.) 1106 provides the requirements for the recommendation of the SJA or legal officer. The purpose of the recommendation "is to assist the convening authority to decide what action to take on the sentence in the exercise of command prerogative." R.C.M. 1106(d)(1). The form of the recommendation is required to be "a **concise** written communication." R.C.M. 1106(d)(2) (emphasis added). The rule specifies the required contents, which includes "[a] statement of the nature and duration of any pretrial restraint." R.C.M. 1106(d)(3)(D).

The appellant's contention that there ought to be some consequence for the SJA's purported failure to correctly advise the convening authority and that this consequence ought to be setting aside the action and returning of the record for new post-trial processing ignores R.C.M. 1106(d)(6), which states: "In case of error in the recommendation not otherwise waived under subsection (f)(6) of this rule, appropriate corrective action shall be taken by appellate authorities without returning the case for further action by a convening authority." This rule has been specifically endorsed by our superior court. *United States v. Wheelus,* 49 M.J. 283, 288–89 (1998).

Our superior court succinctly identified in *Wheelus* the process for resolving claims of error connected with a convening authority's post-trial review. They said an appellant must: (1) allege the error before this Court; (2) allege prejudice as a result of the error; and, (3) show what is needed to resolve the error. *Id.* at 288. If the appellant meets this threshold, we are required to remedy the error and provide meaningful relief. *Id.* at 288–89. We also have the option of returning the case to the Judge Advocate General for remand to the convening authority for a new recommendation and action. *Id.* at 289.

The SJA's recommendation in this case consists of a memorandum and two attachments. The SJA refers to the attachments, saying: "Attached is the AF Form 1359, Report of Result of Trial, which summarizes the charges and specifications, pleas, findings, and sentence. Also attached is a Personal Data Sheet on the accused for your consideration prior to taking action on the sentence." The Report of Result of Trial specifies 3 days pretrial confinement credit. The Personal Data Sheet states: "Civilian confinement, Antelope Valley Sheriff Office, 3 days[.]"

We find the information in the attachments to be adequate. Therefore, we hold the SJA recommendation complies with R.C.M. 1106 and there is no error.

Additionally, even if we were to agree that there was error, the appellant has failed to make even a colorable showing of possible prejudice. *United States v. Kho,* 54 M.J. 63, 65 (2000). The adjudged and approved sentence consisted of a bad-conduct discharge and a one-grade reduction. There was no confinement to apply the 3 day credit against. It cannot be said that the appellant was entitled to an application of the pretrial confinement against other forms of punishment. *United States v. Belmont,* 27 M.J. 516, 517–18 (N.M.C.M.R.1988) and cases cited therein.[4] Thus, in addition to there being no error to remedy, there is no prejudice for which to carve out meaningful relief.

Finally, because there was no "plain error," the appellant waived the issue by failing to comment on it in a timely manner.[5] R.C.M. 1106(f)(6); *Kho,* 54 M.J. at 65.

*United States v. Josey,* ACM 33745 (f rev) (A.F. Ct.Crim.App. 3 Jan 2002).

---

4. Even in cases where an accused is entitled to apply a credit against a form of punishment other than confinement, such credit should not be applied against a punitive discharge or reduction in grade. *See* R.C.M. 305(k), Discussion; *United States v. Rosendahl,* 53 M.J. 344 (2000);

5. We need not discuss "plain error" because we have concluded there was no error at all.

The approved findings of guilty and the sentence are correct in law and fact. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). The approved findings of guilty and the sentence are AFFIRMED.