**Herbert Daniel DETTMER, Appellee,**

**v.**

**Robert LANDON, Director of Corrections, Appellant.**

**No. 85–7514.**

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1986.

Decided Sept. 4, 1986.

Mark R. Davis, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., Nelson H.C. Fisher, Asst. Atty. Gen., Richmond, Va., John K. Messersmith, IV, Third-Year Law Student, on brief), for appellant.

Jeffrey S. Koeze, Third-Year Law Student, Post-Conviction Assistance Project,

University of Virginia School of Law (Professor Stephen A. Saltzburg, Supervising Atty., University of Virginia School of Law, Charlottesville, Va., on brief), for appellee.

Before RUSSELL and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

The Director of the Virginia Department of Corrections appeals from an order of the district court declaring the Church of Wicca to be a religion and enjoining prison officials from denying Herbert Dettmer, an inmate at Powhatan Correctional Center, access to six objects that he requested for use in the private meditation taught by the Church. We agree with the district court that the doctrine taught by the Church of Wicca is a religion, but we vacate the injunction because it is based on an erroneous legal premise and lacks evidentiary support.

## I

In 1982 Herbert Dettmer began studying witchcraft in a correspondence course provided by the Church of Wicca. Within a year he started meditating, following ceremonies for private meditation described in the correspondence course and in other writings that he had gathered. Dettmer decided that he needed the following items to aid and protect him while meditating: a white robe with a hood, sea salt or sulfur to draw a protective circle on the floor around him, candles and incense to focus his thoughts, a kitchen timer to awaken him from short trances, and a small, hollow statue of "one of the gods or goddesses of the deity," to store spiritual power called down during meditation.

The Virginia Department of Corrections guideline 141, regulating inmates' personal property, requires that inmates wishing to purchase merchandise through the mail must place the order through the correctional officer in charge of inmates' property. This officer orders the item, if it is authorized by guideline 141. If not, the officer sends the request to the assistant warden for approval or disapproval. Late in 1983 Dettmer requested permission to order the items he needed for meditating. The property officer informed Dettmer that he would not be permitted to order them because guideline 141 did not list them as "authorized personal property."

Dettmer appealed this decision to the warden, explaining that he needed the items for religious services. The acting warden responded by letter of December 16, 1983: "The items you have requested are not authorized under Division Guideline 141; therefore, your request is denied. The items you have requested are considered contraband regardless of the religious practices." Guideline 141 defines "contraband" as "[g]enerally, any unauthorized item."

In an "informal resolution attempt" beginning January 5, 1984, Dettmer offered to accommodate prison officials' concern for security. He stated that salt would be an acceptable substitute for sulfur. He also asserted: "I have stated that I would provide a box with lock for these items and if need be then security could keep them in their possession until I checked them out in the evenings." Dettmer also stated that he would provide documents to show that the items were "needed for my religious practice."

On January 10, Dettmer was informed that "[t]he items listed in this grievance are not permissible in accordance with ... [guideline 141]. The items are all considered contraband." Dettmer then appealed to the regional prison administrator. On March 1, 1984, the regional administrator responded that Dettmer would be allowed to use the chapel upon prior arrangement with the chaplain, during normal operating hours when the chapel was not being used by other inmates. The regional administrator found that the items requested

are deemed to be a threat to the safety and security of any penal institution, and are not allowable under DGL 141 (Per-

sonal Property). However, if you can provide this office with written proof through doctrine, that the full practice of this rite, with the items you request, is a required tenet of your faith, reconsideration will be given to your request.

Dettmer appealed this decision to the fourth level of the grievance procedure, stating that he had not yet been informed why the items were considered a threat to security. On September 25, 1984, the deputy director for the department of corrections replied: "Your grievance has been *appropriately considered and answered.* I see no reason to alter the Regional Administrator's response." On October 29, 1984, Dettmer filed this action pursuant to 42 U.S.C. § 1983, alleging that the Virginia Department of Corrections had deprived him of freedom of religion.

The district court held that the Church of Wicca is a religion, and it entered the following injunction:

> Accordingly, defendant is hereby ENJOINED from denying plaintiff access to the following items, with the conditions as set out below:
>
> (1): Sulfur, sea salt or uniodized salt: Because plaintiff has indicated that any one of these three items would be equally acceptable, the prison may designate which item plaintiff may be allowed to use.
>
> (2): Quartz clock with alarm: Plaintiff has indicated that a quartz clock with an alarm would be an acceptable substitute for the kitchen timer, since prison officials expressed the concern that a timer could be used as a detonator.
>
> (3): Candles.
>
> (4): Incense.
>
> (5): A white robe without a hood.
>
> (6): The prison may take general custody of the above items, and simply make them available to the plaintiff at reasonable times for plaintiff's worship services, which the prison may supervise. The plaintiff has agreed to provide a secure box for the purpose of storing the items.

On appeal, the government asserts that the Church of Wicca is not a religion entitled to the protection of the first amendment. Even if the Church of Wicca is a religion, the government contends, Dettmer's meditation ceremonies using the requested items are not entitled to first amendment protection because the doctrine of the Church of Wicca does not require use of these items. Finally, the government contends that even if the items are necessary, prison officials reasonably forbade Dettmer to possess them because they would endanger prison security.

## II

In determining whether the Church of Wicca is a religion protected by the free exercise clause of the first amendment, the district court properly considered whether the Church occupies a place in the lives of its members "parallel to that filled by the orthodox belief in God" in religions more widely accepted in the United States. *United States v. Seeger,* 380 U.S. 163, 166, 85 S.Ct. 850, 854, 13 L.Ed.2d 733 (1964). The district court found that members of the Church of Wicca "adhere to a fairly complex set of doctrines relating to the spiritual aspect of their lives." These doctrines concern ultimate questions of human life, as do the doctrines of recognized religions. *See Africa v. Pennsylvania,* 662 F.2d 1025, 1032 (3d Cir.1982); *International Society for Krishna Consciousness, Inc. v. Barber,* 650 F.2d 430, 440 (2d Cir. 1981); *Malnak v. Yogi,* 592 F.2d 197, 208 (3d Cir.1979) (Adams, J., concurring).

The district court also found that the contents of many of these doctrines parallel those of more conventional religions. The Church of Wicca, the court found, believes in another world and has a "broad concern for improving the quality of life for others." Dettmer testified to his belief in a "supreme being."

The district court also noted that the Church's doctrines teach ceremonies parallel to those of recognized religions. Members of the Church of Wicca worship both individually and corporately. Members also follow spiritual leaders. Dettmer tes-

tified that he planned to conduct ceremonies privately and hoped to have the aid of a spiritual leader from the outside community in conducting ceremonies for other inmates. The record showed that he had sought guidance from Wiccan leaders and for several years had been studying the doctrines of the Church of Wicca as expressed by these leaders in books, pamphlets, and a correspondence course of study. Another objective criterion showing the Church of Wicca to be parallel to recognized religions is witchcraft's long history. *Cf. International Society for Krishna Consciousness,* 650 F.2d at 440. Dettmer's evidence includes a handbook for chaplains published by the United States, which states that witchcraft enjoyed a following in Northern Europe during the Middle Ages as an ancient pagan faith, losing public expression when systematic persecution began in the fifteenth century. It regained some popularity after repeal of English witchcraft laws, and the handbook estimates that there are between 10,000 and 100,000 adherents in America.

The government contends that the doctrine of the Church of Wicca is not a religion because it is a "conglomeration" of "various aspects of the occult, such as faith healing, self-hypnosis, tarot card reading, and spell casting, none of which would be considered religious practices standing alone." The government argues essentially that because it finds witchcraft to be illogical and internally inconsistent, witchcraft cannot be a religion. The Supreme Court has held to the contrary that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Board,* 450 U.S. 707, 714, 101 S.Ct. 1425, 1430, 67 L.Ed.2d 624 (1981).

The government argues that even if Dettmer's beliefs may be termed "religious," his rites are not. The government characterizes Dettmer's practices as more akin to meditation than to religion. It asserts that Wiccan meditation is "primarily designed to assist the practitioner to master the concept of positive thinking and to find internal contentment." Dettmer testified, however, that he meditated to "call down power" from "the supreme being" and other deities. The parties stipulated to Dettmer's sincerity. The district court properly concluded that Dettmer's meditation ceremonies are religious. *See Malnak,* 592 F.2d at 198 n. 2 and 199.

The government also contends that Dettmer's rites are not protected by the first amendment because he has not proved that the items he requested are required by the Church of Wicca.

Religious observances need not be uniform to merit the protection of the first amendment. The Supreme Court has recognized that differing beliefs and practices are not uncommon among followers of a particular creed. *Thomas v. Review Board,* 450 U.S. at 715, 101 S.Ct. at 1430–31. "[I]t is not within the judicial function and judicial competence to inquire whether the petitioner or [another practitioner] ... more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation." 450 U.S. at 716, 101 S.Ct. at 1431. *See also Barrett v. Virginia,* 689 F.2d 498, 501 n. 5 (4th Cir.1982).

Dettmer testified he believed the items are necessary, because meditating without them would pose "a dangerous threat to my well-being because we are dealing with ... the spirit world." The district court properly concluded that the prison's denial of access to the items that Dettmer sought was subject to the requirements of the first amendment. *See Gallahan v. Hollyfield,* 670 F.2d 1345 (4th Cir.1982).

We agree with the district court, 617 F.Supp. 592 (1985), that the Church of Wicca occupies a place in the lives of its members parallel to that of more conventional religions. Consequently, its doctrine must be considered a religion. *See Seeger,* 380 U.S. at 166, 85 S.Ct. at 854; *Malnak,* 592 F.2d at 207–10 (Adams, J., concurring).

### III

■ No prisoner at the Correctional Center is allowed to possess the items Dettmer

wants. The security chief explained his concerns as follows:

A white hooded robe could conceal a prisoner's face, and its resemblance to a Ku Klux Klan robe would likely provoke adverse reaction from other prisoners;

Candles can be used as timing devices and to make impressions of keys;

A hollow statue can be used to conceal contraband;

Sulphur can be used to make an explosive;

Incense can be used to disguise the odor of marijuana; and

A kitchen timer can be used as a detonation device.

The state also objects to Dettmer's suggestion that the items be kept in a locked box in the property office when he is not using them. The custodian of the property office testified that contraband owned by prisoners is stored there until arrangements are made for its disposition, but no facilities exist for checking it in and out daily to prisoners. The officer also testified that candles used for chapel services are not furnished by the prisoners. The state opposes providing individual surveillance of Dettmer while he possesses the disputed items during his daily meditation because of the burden this would impose, especially if other prisoners sought similar exceptions to prison routine.

Although the state has steadfastly insisted that Dettmer's action should be dismissed on the ground that the Church of Wicca is not a religion, it also has taken the position that Dettmer may practice his beliefs as long as he does not interfere with prison security. Dettmer has permission to use the chapel when other services are not being conducted. All prisoners can have bathrobes or boxing robes, watches, and clocks. Dettmer is no exception. He can wear a robe that has no hood and he can use a quartz watch or clock instead of a kitchen timing device. There is apparently no objection to a statue that is solid, so that contraband cannot be concealed in it, provided it is small and light enough to preclude its use as a weapon. These accommodations are acceptable to Dettmer. Also, Dettmer is willing to substitute salt for sulphur. Thus, the dispute has been narrowed to the government's objection to Dettmer's possession of candles, incense, and salt during his meditation, and to its refusal to allow him to store these items in a locked box in the property office when he is not using them.

Putting aside the prison official's concerns, the district court held:

To the extent that any of the prison's asserted justifications are legitimate, they are not warranted in this instance because less restrictive alternatives are available to the state. Prison authorities may simply keep the controversial items in a safe location, and make them available to the plaintiff at reasonable intervals as plaintiff may require them, and under such supervision as the defendant believes is necessary to promote prison security.

As this quotation illustrates, the legal predicate for the district court's injunction is the court's perception that the prison authorities had a duty to impose the least restrictive alternatives to satisfy the need for security. The least restrictive means test is appropriate for most encounters between state regulations and first amendment claims. *See Thomas v. Review Board,* 450 U.S. at 718, 101 S.Ct. at 1432 ("The state may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest.").

But the least restrictive means test is not an appropriate measure of a prisoner's first amendment rights. Prisoners retain the right to freedom of religion. *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979). Moreover, a prisoner must be accorded "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081–82, 31 L.Ed.2d 263 (1972). In *Bell v. Wolfish* the Court reiterated: "[W]hen an institutional restriction in-

fringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." 441 U.S. at 547, 99 S.Ct. at 1878. In evaluating the restrictions, courts must accord "wide-ranging deference" to prison administrators' decisions concerning the proper means to accommodate prisoners' rights to the needs of "internal order and discipline," unless there is "substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations." 441 U.S. at 547–48, 99 S.Ct. at 1878–79.

Affording officials the deference that *Bell v. Wolfish* commands, we conclude that the security officer's concern about inmates' unsupervised possession of candles, salt, and incense is reasonable. *See Childs v. Duckworth,* 705 F.2d 915, 921 (7th Cir.1983). There is no substantial evidence indicating that prison officials exaggerate the difficulties in supervising individual inmates' use of contraband articles in religious rites. *See Bell v. Wolfish,* 441 U.S. at 547–48, 99 S.Ct. at 1878–79.

Although clergy may use candles during religious services in the prison, no prisoners, not even those participating in conventional religious services, are allowed to possess them. The decision to prohibit Dettmer from possessing the items that he sought did not discriminate against him because of his unconventional beliefs. *See Cruz v. Beto,* 405 U.S. at 322, 92 S.Ct. at 1081–82.

The restrictions imposed on Dettmer must be viewed in context of the accommodations officials have made to allow him to observe his religious beliefs. Considered in this manner, the restrictions do not infringe the rights secured to him by the first and fourteenth amendments. We affirm the district court's judgment that the doctrine proclaimed by the Church of Wicca is a religion entitling Dettmer to the protection that the first amendment affords prisoners. The injunction, however, is premised on a principle that does not apply to prisoners. Tested by the applicable precepts of *Bell v. Wolfish* and *Cruz v. Beto,* the injunction is not warranted by the evidence.

AFFIRMED IN PART, REVERSED IN PART.