**UNITED STATES, Appellee,**

v.

**Staff Sergeant Wesley E. DANIELS, Jr., 100–46–8635, United States Army, Appellant.**

**CM 448673.**

U.S. Army Court of Military Review.

27 Feb. 1987.

For Appellant: Colonel Brooks B. La Grua, JAGC, Major Dale K. Marvin, JAGC,

Major Eric T. Franzen, JAGC, Captain Scott A. Hancock, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Lieutenant Colonel Larry D. Williams, JAGC, Captain Carlton L. Jackson, JAGC (on brief).

Before PAULEY, De GIULIO and KENNETT, Appellate Military Judges.

## OPINION OF THE COURT

PAULEY, Senior Judge:

The appellant was tried by a general court-martial composed of officer and enlisted members at Fort Bragg, North Carolina. Contrary to his pleas, he was found guilty of carrying and discharging a firearm on post, and possession of marijuana, in violation of Articles 92 and 112a, Uniform Code of Military Justice [hereinafter cited as UCMJ], 10 U.S.C. §§ 892 and 912a (1982 and Supp. II 1984), respectively. Additionally, he was found guilty, by exceptions and substitutions, of involuntary manslaughter (by culpable negligence) under Article 119, UCMJ, 10 U.S.C. § 919 (1982).[1] The appellant was sentenced to confinement for eighteen months and that sentence was approved by the convening authority.

On 5 October 1985, the victim in this case, Private First Class (PFC) Steve Slemmer and his friend PFC Douglas Lopes visited an enlisted club on post and remained there until it closed at 0130 hours the next morning. The two soldiers then were taken by taxi to their barracks. As PFC Lopes got out of the taxi, the appellant drove by and narrowly missed striking him with his automobile. Private First Class Slemmer yelled at the appellant who stopped, backed his vehicle to where the two soldiers were standing and began to argue with PFC Slemmer. Private First

---

1. He had been charged with premeditated murder under Article 118, UCMJ, 10 U.S.C. § 918 (1982).

Class Lopes departed the scene. The appellant remained in the driver's seat and PFC Slemmer was positioned by the window on the driver's side of the vehicle. The appellant produced a loaded revolver and cocked the weapon. It was subsequently discharged and a bullet struck PFC Slemmer in the head. He fell to the pavement, mortally wounded, and the appellant drove away. The appellant was accompanied by a passenger, Miss Wanda Burke. Several days later, Miss Burke related details of the shooting to one of her friends who reported the matter to military authorities. The appellant was apprehended on 8 October 1985, acknowledged that he had shot the victim and had left the scene, but protested that the shooting was an accident. Shortly thereafter, PFC Slemmer expired.

The appellant was placed in pretrial confinement on 8 October 1985, the day of his apprehension. On 15 and 28 October 1985, the military magistrate reviewed the necessity of continued pretrial confinement and concluded that such confinement was warranted. On 17 December 1985, however, the magistrate found that continued pretrial confinement was no longer necessary and released the appellant. The appellant was in pretrial confinement for a period of seventy-one days for which he received administrative credit against his sentence.

The assignments of error urged upon this court are that the military judge erred by failing to find appellant's pretrial confinement to be unjustified and that the pretrial confinement imposed upon appellant was more rigorous than necessary to ensure his presence at trial and amounted to prior punishment. We find that neither assigned error has merit and will affirm the findings of guilty and the sentence.

## I

█ We will deal first, briefly, with the appellant's assertion that his pretrial confinement was unjustified. This issue was thoroughly litigated at trial when the trial defense counsel moved for appropriate relief arguing that the accused's pretrial con-

finement "wasn't necessary." In a *de novo* hearing, the trial judge reviewed evidence available to the military magistrate and heard argument from counsel for both sides. He determined that the pretrial confinement was "both legal and proper under the circumstances." We commend the trial judge for setting out in detail his findings of fact and conclusions of law concerning this issue. We are in complete agreement with his ruling and find no abuse of discretion. *See United States v. Otero*, 5 M.J. 781 (A.C.M.R.), *petition denied*, 6 M.J. 121 (C.M.A. 1978).

## II

The appellant next alleges that Article 13, UCMJ, 10 U.S.C. § 813 (1982), and Army Regulation 190–47, Military Police, The United States Army Correctional System (1 Oct. 1978) [hereinafter cited as AR 190–47], which prescribe the standards for military confinement, require a finding that his confinement was more rigorous than necessary to ensure his presence and thus amounted to illegal punishment for which he should receive additional credit against his approved sentence. *See United States v. Suzuki*, 14 M.J. 491 (C.M.A. 1983).

As a result of a contractual arrangement between the Army authorities at Fort Bragg and Cumberland County, North Carolina, the appellant was placed in pretrial confinement at the Cumberland County Jail, a civilian facility. Appellate defense counsel argue, as did trial defense counsel, that the pretrial confinement imposed upon appellant at that institution was more rigorous than necessary to ensure his presence at trial and therefore amounted to prior punishment.

The testimony at trial during motion practice centered on the conditions of confinement at the civilian facility. Captain Ford, a member of the Cumberland County Sheriff's Department, and the "chief jailer" for the county testified that the appellant was confined in a cell block populated by other prisoners charged with murder. The number of prisoners in the cell block varied from five to nine. The prisoners were re-

quired to perform nominal housekeeping duties in their own cell block each day. Recreational activities which were available involved use of a color television set, board games and reading materials. The prisoners were not required to perform any other sort of labor. They were not permitted to leave the cell block, but were encouraged to do calisthenics for exercise within a common area. Visiting hours were on weekends from two to four-thirty in the afternoon and were "non-contact" visits, meaning that visitors would be separated by a wall and a plexiglass window and would communicate through a speaking device located in the window. The prisoners were required to wear an orange "jump suit" with "Cumberland County Jail" stenciled on the back. One disposable safety razor, for shaving purposes, was available each day for joint use by the entire cell block.

The appellant also testified and complained that the food at the jail was of poor quality and often cold when served. He stated that the razor often was inadequate for shaving purposes due to prior use, that the cell block was always uncomfortably cold, that incoming mail was opened and inspected and that prisoners were subjected to periodic searches of their person and cell. The appellant testified that the "caliber" of his fellow inmates was "pretty poor" and that he felt uncomfortable in their presence.

■ We will concede that the Cumberland County Jail lacked some of the amenities required by AR 190–47 for military confinement facilities. For example, the appellant did not have access to either a visitors' room that allowed "contact" visits or outside recreational facilities as required by the regulation. However, it is of no matter that every provision of AR 190–47 was not met by the civilian facility, but rather the question must be whether the conditions of confinement at the Cumberland County Jail constituted a violation of Article 13. *See United States v. Davidson,* 14 M.J. 81, 84 (C.M.A. 1982). We find that no such violation existed and we are satisfied that the appellant's confinement, while perhaps unpleasant,[2] certainly met the standards of Article 13 and any other test of enlightened penal standards.[3] *Cf., Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974). Confinement in a civilian facility which does not meet, in all instances, the requirements of AR 190–47 is not, *per se,* illegal confinement but must be tested against the general provisions of Article 13. *Cf., United States v. Palmiter,* 20 M.J. 90 (C.M.A. 1985). *See also Bell v. Wolfish,* 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979). Applying these principles against the facts of this case, we have no hesitancy in finding that appellant's confinement in the Cumberland County Jail did not constitute prior punishment.

The findings of guilty and the sentence are affirmed.

Judge De GIULIO and Judge KENNETT concur.

---

2. As Mr. Justice Frankfurter stated in *United States v. Lovett,* 328 U.S. 303, 324, 66 S.Ct. 1073, 1083, 90 L.Ed. 1252 (1946) (Frankfurter, J., concurring): "The fact that harm is inflicted by governmental authority does not make it punishment. Figuratively speaking all discomforting action may be deemed punishment because it deprives of what otherwise would be enjoyed. But there may be reasons other than punitive for such deprivation."

3. The Cumberland County jailer, when questioned as to "certification" of his facility testified as follows:

We're one of three confinement facilities in the state of North Carolina certified by the American Medical Association, the AMA; we're also inspected and approved by the Federal Bureau of Prisons, the U.S. Marshal Service, the Army, the Air Force; we're inspected by the Department of Human Resources for the state of North Carolina, the Health Department—various agencies coming through and inspecting continuously.