UNITED STATES, Appellee

v.

Staff Sergeant Michael O. HITCHMAN,
090–50–1886, United States
Army, Appellant.

ACMR 8802902.

U.S. Army Court of Military Review.

4 Jan. 1990.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Allen F. Bareford, JAGC (on brief).

For Appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Maria Fernandez, JAGC, Captain James K. Reed, JAGC (on brief).

Before MYERS, JOHNSON, and NEURAUTER, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Judge:

Consistent with his pleas, the appellant was convicted by a military judge sitting as a general court-martial on 26 July and 9 December 1988 of wrongful distribution of cocaine (two specifications) and wrongful discharge of a firearm in violation of Articles 112a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 934 (1982 and Supp. IV 1986) [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for two years, total forfeitures, and reduction to Private E1. Pursuant to a pretrial agreement, the convening authority approved confinement for twenty months and the remainder of the adjudged sentence.

Appellant was apprehended by United States Army Criminal Investigation Command (CID) Special Agent (SA) Houser on Friday, 13 May 1988, for distribution of cocaine. Later the same day, CID released appellant to his company commander, Major (MAJ) Gunning. MAJ Gunning restricted appellant to Fort Richardson and required that appellant report every four hours to the charge of quarters (CQ). Aware of appellant's suspected involvement in serious drug matters and his preparations to leave Alaska for his next duty station, MAJ Gunning directed the reporting requirement out of concern that appellant would flee to avoid prosecution. Throughout the weekend, MAJ Gunning regularly called the CQ to check on appellant's status and to ensure that his instructions were carried out. On Monday, 16 May 1988, MAJ Gunning was briefed by SA Houser about possible intimidation of two female witnesses who had made statements implicating appellant in drug activities. The witnesses, Specialists (SPC's) A and V, who had worked for appellant, had expressed their anxiety to SA Houser upon hearing rumors over the weekend that it was known they had assisted the CID in its investigation of appellant. Both were upset after other soldiers talked to them about appellant's apprehension. In addition, SA Houser had learned through a reliable informant that appellant had probably attended a party on the evening of 14 May, the day after being placed on restriction. At the party, the informant overheard certain attendees, known to be associates of appellant, discussing appellant's apprehension, that appellant was in a lot of trouble because of SPC V, and that SPC V would be "taken care of." MAJ Gunning also was shown a sworn statement signed by SPC A concerning threats to her, and then spoke with her to verify its truthfulness.[1] MAJ Gunning arranged to have appellant placed in pretrial confinement in the post detention facility that Monday. On 18 May 1988, the initial Article 112a, UCMJ, charge and four specifications of distributing cocaine were preferred. Two of the specifications alleged distribution on nine and on five occasions, respectively.

On 20 May 1988, a military magistrate conducted a hearing to review appellant's pretrial confinement. The magistrate was presented with information regarding appellant's alleged drug dealings and the possible intimidation of witnesses.[2] Several sworn statements used by the government in its presentation as well as the commander's pretrial confinement checklist were reviewed by the magistrate. On the basis of this information, the magistrate found that probable cause existed to believe that appellant committed the offenses with which he was charged, that it was reasonably foreseeable that appellant would commit further offenses were he to be released, and that a substantial probability existed that appellant would flee to avoid trial.

---

1. SA Houser had spoken to both SPC V and SPC A about the possible intimidation that took place within two or three days of appellant's apprehension and restriction. Both had made verbal and written statements implicating appellant in drug matters.

2. From the testimony at trial, we learn that SA Houser and Captain (CPT) Imhof from the Staff Judge Advocate's office were the chief spokesmen at the magistrate's hearing, that the appellant responded to some questions but not to others, and that appellant's commander, MAJ Gunning, was present more as an observer than as a participant.

The magistrate specifically noted that appellant's ties to the community were "tenuous at best" in light of his preparations for his move to his next duty station and the apparent lack of kin in the immediate area. Further, appellant had sufficient financial resources to enable him to flee the area if he so desired.

Appellant was then returned to pretrial confinement where he remained until his trial on 9 December 1988.[3] At trial, appellant received day for day credit for each of the 207 days he had spent in pretrial confinement. Civilian defense counsel moved that appellant be granted additional administrative credit toward his sentence under R.C.M. 305(k) on grounds that appellant's pretrial confinement was illegal. The military judge then conducted an evidentiary hearing to determine the legality of appellant's pretrial confinement at which appellant, MAJ Gunning, and SA Houser testified. During his testimony, appellant was not asked and did not say anything regarding his involvement with witness intimidation. Further, the record contains no indication that at the magistrate's review appellant denied attending the party despite hearing SA Houser's presentation to the magistrate regarding appellant's alleged attendance and the alleged threats against the witnesses. Finally, SA Houser testified that, although he was not certain that appellant was the source of the alleged threats, the threats had occurred soon after appellant's apprehension and appellant was the only one who could have known the sources of the information against him.

Defense counsel argued that the information that appellant had attended the party where threats allegedly were made against possible government witnesses was unreliable and uncorroborated. Defense counsel premised his argument on appellant's testimony that he had not attended the party and SA Houser's testimony that he did not know whether appellant was the source of the alleged threats against the witnesses. Accordingly, argued defense counsel, the magistrate's reliance solely upon this information in ordering appellant's continued confinement was an abuse of discretion.

On the basis of the testimony before him and his review of the magistrate's memorandum, the commander's pretrial confinement checklist, and the confinement order (Appellate Exhibit I), the military judge found the magistrate did not abuse her discretion in ordering appellant's continued pretrial confinement and denied the defense motion. The military judge made no special findings with regard to his decision.

I

Before this court, appellant alleges that the military judge abused his discretion in finding the magistrate's decision to continue appellant in pretrial confinement to have been proper. We find that the military judge acted properly and within the bounds of his discretion in ruling on the magistrate's actions.

■ This court's review of such an issue is limited to examining the military judge's ruling on appellant's motion for appropriate relief. *United States v. Daniels*, 23 M.J. 867 (A.C.M.R.1987; *United States v. Otero*, 5 M.J. 781 (A.C.M.R.), *pet. denied*, 6 M.J. 121 (C.M.A.1978). We note that the Air Force Court of Military Review has taken a different approach—directly reviewing the decision of the military magistrate for an abuse of discretion to determine if the trial judge ruled correctly on the motion. *United States v. Rios*, 24 M.J. 809 (A.F.C.M.R.1987). We decline to adopt that approach. To do so would, in our view, be inconsistent with permitting an accused to litigate the issue *de novo* before the trial judge. The procedure permitted by the military judge here is one we favor and which we believe is contemplated by the provisions of R.C.M. 305(j). *See Otero*, 5 M.J. at 784.

---

3. The government was responsible for seventy-seven days of the pretrial confinement period, from 16 May to 1 August 1988, whereas the defense was chargeable with the balance, one hundred and thirty days running from 2 August to 9 December 1988, for requested delays due to the non-availability of appellant's civilian defense counsel.

By hearing the testimony of appellant, MAJ Gunning, and SA Houser, the military judge expanded the scope of the hearing beyond what otherwise would be required merely to determine whether there had been an abuse of discretion by the magistrate. Such a hearing normally would have required only a review of the information presented to the magistrate in accordance with R.C.M. 305(i); that is, the actual information upon which the magistrate's ruling was based. *See Rios*, 24 M.J. at 810.

In denying appellant's motion, however, the military judge did not state for the record that he found the pretrial confinement to be both legal and proper on the basis of the evidence before him, as would be appropriate in a *de novo* hearing, but only that the magistrate had not abused her discretion in ordering appellant's continued confinement. This statement might be construed to indicate that the military judge, despite all the evidence before him, only considered the information that had been presented to the magistrate in reaching her decision. Civilian defense counsel's argument, however, focused on the issue of abuse of discretion generally. Accordingly, we shall consider two issues when reviewing the military judge's ruling: first, whether there was an abuse of discretion when he found no abuse of discretion by the magistrate; and second, whether he abused his discretion when taking into consideration all matters presented at the *de novo* hearing.

We turn first to the evidence before the military judge regarding the information presented to the magistrate to determine whether the military judge was persuaded correctly by a preponderance of the evidence that the magistrate had not abused her discretion. Beyond the materials contained in Appellate Exhibit I, no written record exists of the magistrate's hearing in this case. Though R.C.M. 305(i)(3)(A) authorizes oral statements to a magistrate, written matters are contemplated to ensure that a record is kept of the matters considered by the reviewing officer. R.C.M. 305 analysis at A21–16. The need for such a written record is made manifest in the case before us. For example, the magistrate's memorandum notes that several sworn statements were used by the government in its presentation, but the statements are not identified nor are they appended to the memorandum.

Although the magistrate's memorandum does not identify the source of her finding as to "alleged intimidation of possible witnesses by SSG Hitchman," the finding appellant asserts was not corroborated by the magistrate, the record indicates that it could have come from the pretrial confinement checklist,[4] or perhaps from the presentations made to the magistrate by SA Houser or CPT Imhof. Since we cannot verify from the record what was said and by whom, we will not speculate further. It is clear, however, that the magistrate had before her evidence of witness intimidation which was unrebutted by appellant. Given the informal nature of the hearing and the opportunity for appellant or his counsel to present matters, it was the proper time for appellant to contest the matters presented by the government and thereby possibly avoid pretrial confinement. There is no indication or allegation that the commander's statement or any other presentations made to the magistrate were done in anything but good faith with no intent to deceive. Accordingly, we find the magistrate's reference to alleged intimidation of witnesses by appellant to be supported by a preponderance of the evidence. The military judge, therefore, could quite properly have upheld the magistrate's order on that basis alone. The military magistrate, however, based her decision equally on information before her which indicated that appellant might very well flee to avoid prosecution. R.C.M. 305(h)(2)(B). Considering all the inferences which could be drawn

---

4. The commander's checklist notes that:
The accused has made statements to one of the witnesses that if they were to give information to the authorities about the accused's drug dealings, the witness would be seriously hurt. After the accused was arrested, both witnesses received warnings from third parties that the word was out that they had 'snitched' on the accused and they were in danger.

from matters presented to the magistrate and the factual conclusions cited to support her findings, we find the military judge would not have erred had he announced, as justification for his ruling that there was no abuse of discretion by the magistrate, that the magistrate's conclusions were supported by a preponderance of the evidence. Therefore, the judge's ruling was correct and we find no abuse of discretion.

The second consideration inherent in the military judge's ruling must now be examined: taking into consideration all matters presented at the *de novo* hearing at trial, was there an abuse of discretion by the judge when he denied appellant's motion. Three witnesses testified during the evidentiary hearing on appellant's motion: the appellant and SA Houser, called by appellant's civilian defense counsel; and MAJ Gunning, appellant's commander, called by the government. The special agent and the commander provided detailed information concerning their knowledge of SSG Hitchman's conduct and activities and the reasons which led them to conclude prior to the magistrate's hearing that pretrial confinement was required. SA Houser's principal concern was over the intimidation of witnesses, whereas MAJ Gunning was convinced that appellant would flee to avoid prosecution. MAJ Gunning had been briefed extensively by the special agent during the course of the latter's investigation into appellant's drug related activities. In sum, their testimony convincingly supports the factual findings set out in the military magistrate's decision memorandum.

On the other hand, the only new evidence offered by the defense that was not before the military magistrate was appellant's denial that he had attended the party on 14 May, offered apparently to suggest that he had nothing to do with intimidation of witnesses, and his allegation that he had surrendered his passport to his first sergeant at the time he was restricted. He did not deny involvement with witness intimidation or offer any rebuttal to the government's concerns that he would flee to avoid trial, matters seemingly more pertinent to attacking the legality of his confinement.

Reviewing the entire record, we find that the military judge's ruling was correct and that he did not abuse his discretion in denying appellant's motion.

## II

■ Appellant also asserts that the military judge erred by accepting appellant's guilty plea to wrongfully and willfully discharging a firearm because the providence inquiry failed to establish factually that appellant's conduct was to the prejudice of good order and discipline or was of a nature to bring discredit upon the armed forces. We find for other reasons that the plea was improvident, and therefore need not reach appellant's contention.

The firearm charge arose from an incident in the early morning hours of 1 January 1988 when appellant, who had hosted a party at his home in a residential area of Anchorage, Alaska, attempted to break up an argument among some of his guests which had spilled out into the street by firing a pistol shot into the air in front of his residence. Appellant stated he intended to frighten and disperse the crowd that had gathered so as not to awaken or disturb his neighbors.

■ A guilty plea is not provident unless an accused is willing to admit all essential elements of the offense. *United States v. Stener*, 14 M.J. 972 (A.C.M.R.1982). Although the plea inquiry may have established an adequate factual predicate for most of the elements of the offense and appellant's admission thereto, the inquiry cannot reasonably be construed to have elicited a willingness to admit guilt under Article 134, UCMJ, as charged, an essential element of which requires that the conduct be to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

During the providence inquiry, the military judge advised appellant of all the elements of an offense under Article 134, including that element which provides that the charged act must be prejudicial to good order and discipline or be service discredit-

ing. The military judge then solicited appellant's description of his actions, his understanding of what they meant, and whether he admitted that they constituted the elements of the offense. This he did for each and every element of the offense, with the exception of whether appellant's acts were prejudicial to good order and discipline or service discrediting. Nothing further regarding that element was mentioned during the providence inquiry—no explanation of its meaning, whether appellant understood what it meant under the circumstances or, more importantly, whether he admitted it.[5]

We also note that the military judge thoroughly reviewed appellant's stipulation of fact to ensure the latter's understanding; but the stipulation does not contain any reference to this element. Finally, as is customary in drafting Article 134 charges, the specification setting out the specific elements of the offense does not aver that the appellant's actions were prejudicial to good order and discipline or were service discrediting. Under these circumstances, we cannot conclude that appellant was fully apprised of this element, that he understood its meaning relative to his offense, or that he knowingly and intelligently admitted that element. Consequently, the plea was not provident and the charge of willfully and wrongfully discharging a firearm must fall.

 In view of the issues not infrequently raised regarding the providency of an accused's guilty plea involving the Article 134 element, we believe that as a minimum a military judge should clearly state the Article 134 element and provide to the accused an explanation of terms at least to the extent set out in the Benchbook. Further, the military judge should ask the accused if he or she understands the element and, upon eliciting an affirmative response, whether the Article 134 element is admit-

ted. See United States v. Cornelius, 29 M.J. 501 (A.C.M.R.1989). Although it may be desirable in certain cases for the military judge to inquire further into the Article 134 element, the discourse indicated above will meet the minimal providency requirement.

The findings of guilty of Charge III and its Specification are set aside and in the interest of judicial economy, Charge III and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted, the entire record, and the seriousness of the cocaine distribution charges of which appellant was convicted, the sentence is affirmed.

Senior Judge MYERS and Judge NEURAUTER concur.

---

**5.** We note that the Military Judge's Benchbook presents a model specification and the elements of the offense in question, including a short explanation of conduct prejudicial to good order and discipline and of service discrediting conduct. Dep't of Army, Pam. 27–9, Military Judge's Benchbook [hereinafter Benchbook], para. 3–151 (15 October 1986). As a reminder to a judge when discussing elements or preparing instructions, these explanations are repeated for each and every Article 134 offense described in the Benchbook, some sixty-six different offenses in all. Benchbook, paras. 3–125A–3–191.