**UNITED STATES, Appellee,**

v.

**Specialist Allen L. PHILLIPS, Jr., 595–30–9916, United States Army, Appellant.**

**ACMR 9200239.**

U.S. Army Court of Military Review.

10 Nov. 1993.

For Appellant: Captain Robert L. Carey, JAGC, Captain Victor A. Tall, JAGC (on brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Major James A. Pohl, JAGC, Major Joseph C. Swetnam, JAGC, Captain Robert J. Walters, JAGC (on brief).

Before WERNER, LANE, and RUSSELL, Appellate Military Judges.

OPINION OF THE COURT

LANE, Judge:

Pursuant to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of conspiracy to wrongfully distribute cocaine, absence without leave,[1] wrongful possession of co-

---

1. The appellant also pleaded guilty to a breach of restriction occurring on the same day as the inception of the unlawful absence. His counsel argued that the two offenses were multiplicious

caine, and wrongful distribution of cocaine, in violation of Articles 81, 86, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 886 and 912a (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence to a bad-conduct discharge, confinement for twenty months, forfeiture of all pay and allowances, and reduction to Private E1.

■ The appellant contends, inter alia, that the military judge erred in finding no pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813,[2] where the appellant was taken in public in handcuffs, his head was "shaved," he was commingled with sentenced prisoners at the Cumberland County (North Carolina) Jail, and he was refused possession of a copy of the Wiccan[3] "bible" while in that jail. We disagree.

After the issue of pretrial punishment had been fully litigated in a post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a), session, the military judge made specific findings addressing each of the appellant's complaints. The standard of review for interlocutory questions, such as the findings of a military judge concerning pretrial punishment, is whether there was an abuse of discretion. *United States v. Daniels,* 23 M.J. 867 (A.C.M.R.1987); *United States v. Otero,* 5 M.J. 781, 784 (A.C.M.R.), *pet. denied,* 6 M.J. 121 (C.M.A.1978); *see United*

*States v. Rosser,* 6 M.J. 267, 271 (C.M.A. 1979) (abuse of discretion analyzed).

The military judge properly considered whether the appellant had demonstrated by a preponderance of the evidence that a particular treatment or condition was either intended as punishment or so onerous as to amount to punishment. *United States v. Palmiter,* 20 M.J. 90 (C.M.A. 1985); *United States v. Walker,* 27 M.J. 878 (A.C.M.R.), *aff'd* 28 M.J. 430 (C.M.A. 1989) (summary disposition); R.C.M. 905(c). We agree with the military judge that the use of handcuffs, the "recruit style" haircut, the conduct of cadre personnel, and the commingling with post-trial prisoners were neither done with any intent to impose punishment on the appellant nor so onerous as to amount to punishment absent any intent to punish.

■ Because of the potential impact on the appellant's First Amendment right of freedom of religion, we separately address the county jail's policy under which the appellant was denied his Wiccan "bible."[4] "When it is alleged that a prison policy impinges on an inmate's constitutional rights, the policy is valid 'if it is reasonably related to legitimate penological interests.'" *McCorkle v. Johnson,* 881 F.2d 993, 995 (11th Cir.1989) (quoting *Turner v. Safley,* 482 U.S. 78, 107, 107 S.Ct. 2254, 2271, 96 L.Ed.2d 64 (1987)). In considering

---

for sentencing. The trial counsel conceded the issue, and suggested to the military judge that dismissal was appropriate as the appellant had pled guilty to the offense. However, the military judge chose to enter a finding of not guilty of the breach of restriction. An absence without leave of more than a short duration and breaking restriction were not multiplicious under the "same transaction" test of *United States v. Baker,* 14 M.J. 361 (C.M.A.1983). *United States v. DiBello,* 17 M.J. 77 (C.M.A.1983). Under the "elements of the offense" test now applicable to multiplicity issues, *United States v. Teters,* 37 M.J. 370 (C.M.A.1993), the offenses are likewise not multiplicious. Thus, the military judge was not required to grant the defense motion. However, in acceding to the government's offer to forgo trial on the offense, the more proper disposition would have been dismissal. Rule for Courts–Martial 907(b)(3)(B) [hereinafter R.C.M.].

**2.** Article 13, UCMJ, states, in part:

No person, while being held for trial, may be subjected to punishment ... other than arrest or confinement ... nor shall the arrest or confinement ... be any more rigorous than the circumstances require to insure his presence....

**3.** Wicca is a pagan religion not unlike the ancient Druid faith, believing in the sacredness of Nature. While not involving a belief in, or worship of, Satan, prejudice against Wiccans exists because of popular confusion between witchcraft (which is part of the Wiccan faith) and Satanism. *See* Office of the Chief of Chaplains, Dep't of the Army, Religious Requirements and Practices of Certain Selected Groups: A Handbook for Chaplains (n.d.).

**4.** In deciding this issue, we need not address whether the Wiccan faith is, in fact, a religion, nor the sincerity of appellant's belief therein. It is noted, however, that he claimed to have been a practitioner for only eight or nine months.

what constitutes legitimate penological interests, courts defer to prison administrators on matters relating to prison administration, order, and security. *Jones v. North Carolina Prisoners' Union, Inc.*, 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Harris v. Thigpen*, 727 F.Supp. 1564, 1580 (M.D.Ala.1990). Thus, in *McCorkle*, the court upheld a prison policy denying inmates materials related to satanic beliefs because those beliefs teach hatred of persons and disrespect for laws, and encourage practices detrimental to good order and discipline in the prison.

In his testimony during the post-trial hearing, the appellant's first sergeant testified as follows:

> I remember one time when we were visiting him when he was in Cumberland County, he stated they wouldn't let him have his bible and some kind of religion that I'm not to [sic] aware of and Captain—I think it was Captain Johnson, notified—talked to the head jailer there and the woman stated that it wasn't a recognized religious practice in the State of North Carolina and that he was more than welcome to have a bible, but the one that he wanted, they wouldn't allow, no.

No evidence was presented to show that the denial was intended to punish the appellant either for his charged offenses or his religious beliefs. Even if the Cumberland County jailers were versed enough in religion to know of the Wiccan faith and to differentiate it from Satanism (which has rather bizarre practices), the confusion and lack of acceptance generally prevalent in the community (see note 3), which naturally spills over into the jail population, supports finding that the policy under which the appellant was denied his bible was reasonably related to a valid penological interest, that is, good order and discipline in the jail.

Both the Court of Military Appeals and this court have had occasion to review conditions at the Cumberland County jail. *United States v. James*, 28 M.J. 214 (C.M.A.1989); *Daniels*, 23 M.J. 867. While conceding that the jail "lacked some of the amenities required by [Army Regulation] 190–47 for military confinement facilities,"

the issue was not whether every provision of that regulation was met but "rather the question must be whether the conditions constituted a violation of Article 13." *Daniels*, 23 M.J. at 869. Viewing confinement conditions on a spectrum ranging from minimal to onerous (that is, overly "rigorous," to use the terminology of Article 13), and, using a totality of the circumstances test capable of handling the subtle nuances of individual cases, we find that the denial of appellant's bible was not so onerous as to be more rigorous than the circumstances required and thus amount to unintentional punishment. *Cf. United States v. Russell*, 30 M.J. 977 (A.C.M.R. 1990). The denial of the Wiccan "bible" was "an incident of a legitimate nonpunitive governmental objective," and the military judge did not abuse his discretion in finding no pretrial punishment. *Palmiter*, 20 M.J. at 95 (quoting *Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979)).

The record shows that, with respect to the administration of confinement facilities, the Army is more tolerant than Cumberland County, North Carolina, toward nonmainstream religions. If authorities at Fort Bragg are going to use civilian confinement facilities, they should consider seeking some accommodations by the civilian authorities so that pretrial confinement at Cumberland County jail approximates pretrial confinement at a military facility as much as possible. *See Short v. Chambers*, 33 M.J. 49, 52 (C.M.A.1991); *James*, 28 M.J. 214.

The remaining assertions of error, to include those raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), are without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge WERNER and Judge RUSSELL concur.