**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LARRY DOSWELL,
Plaintiff-Appellant,

v.                                                               No. 94-6780

DAVE SMITH,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-94-316-R)

Argued: December 1, 1997

Decided: March 13, 1998

Before WIDENER and MURNAGHAN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed in part, reversed in part, vacated and remanded by unpub-
lished opinion. Senior Judge Phillips wrote the opinion, in which
Judge Murnaghan joined. Judge Widener wrote a concurring opinion.

_____

**COUNSEL**

**ARGUED:** Patrick M. Curran, Student Counsel, Appellate Litigation
Program, GEORGETOWN UNIVERSITY LAW CENTER, Wash-
ington, D.C., for Appellant. Collin Jefferson Hite, Assistant Attorney
General, OFFICE OF THE ATTORNEY GENERAL, Richmond,
Virginia, for Appellee. **ON BRIEF:** Steven H. Goldblatt, Director,

Mary L. Clark, Supervising Attorney, James M. Oleske, Student Counsel, J. Christian Word, Student Counsel, Appellate Litigation Program, GEORGETOWN UNIVERSITY LAW CENTER, Washington, D.C., for Appellant. James S. Gilmore, III, Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

————————————————————————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

————————————————————————————

**OPINION**

PHILLIPS, Senior Circuit Judge:

Larry Doswell, a Virginia prison inmate, appeals from the judgment of the district court dismissing on the merits his claims of violations of due process and free exercise rights by Virginia prison officials in transferring him to a prison facility which did not provide the kosher food required by his asserted religious belief. Because we cannot discern the legal basis for the court's dismissal of the free exercise claim, we vacate the judgment dismissing it and remand the claim for reconsideration. Because we believe the due process claim to be subsumed within and dependent upon the free exercise claim, we decline to disturb its dismissal.

I.

Doswell is an inmate of the Virginia Department of Corrections ("VDOC"). Sometime in 1991, while incarcerated at Greensville Correctional Center ("Greensville"), Doswell decided to convert to the Jewish faith. After he had informed prison officials of his religious conversion, Doswell was transferred to Buckingham Correctional Center ("Buckingham"), which at the time was the only correctional institution in Virginia to offer kosher meals.[1] Doswell received kosher

————————————————————————————

[1] At oral argument, the State indicated that as part of state-wide reorganization Augusta Correctional Center now serves kosher meals to

2

meals at Buckingham continuously until April 6, 1994, when he was transferred to Augusta Correctional Center ("Augusta"), a move the Commonwealth asserts was necessary after its discovery of a plot by Doswell to kill two correctional officers at Buckingham.

Upon arriving at Augusta, Doswell was placed in segregated confinement. He was not informed of the reason for his transfer nor why he was placed in segregated confinement. When informed that he could not receive kosher meals at Augusta, Doswell refused to eat the regular fare offered there but instead purchased prepackaged cheese, crackers, and noodles from the prison commissary. After nearly a month of this practice, Doswell filed this action pro se.

In the action Doswell sought a temporary restraining order enjoining the wardens at Augusta and Buckingham from holding him in segregated confinement at Augusta, from denying him a kosher diet, and challenged the transfer from Buckingham to Augusta.

Following some procedural preliminaries, the district court granted in part and denied in part the Commonwealth's motion for summary judgment. Construing Doswell's complaint to allege under 42 U.S.C. § 1983 both a free exercise claim respecting the kosher diet denial and a procedural due process claim respecting the transfer, the court granted the motion to dismiss the procedural due process claim and denied the motion to dismiss the free exercise claim on the basis that there were as to that claim genuine issues of material fact. In dismissing the due process claim, the court concluded that Doswell's transfer did not implicate a protected liberty or property interest under Virginia law and therefore the State was free to transfer Doswell without providing either pre or post-deprivation procedures. See JA 100-01.

After a bench trial, the court then denied Doswell's free-exercise claim. Relying on the basic principle that the Free Exercise Clause

_____

inmates who demonstrate a sincerely held religious motivation. The State continues to maintain, however, that Doswell is not entitled to kosher meals at Augusta because he does not have a sincerely held religious belief justifying his receipt of kosher meals. The State's continued refusal to afford Doswell kosher meals prevents these recent developments from mooting Doswell's claims.

only protects the exercise of sincerely held religious beliefs, the court concluded "that any personal belief that [Doswell] should keep [k]osher is based primarily on a desire to eat food which has not been prepared or otherwise touched by other inmates." JA 309. Since Doswell described himself as an Orthodox Jew, the court credited the testimony of an ordained rabbi who (over objection from Doswell) stated in deposition testimony that Doswell was not an Orthodox Jew. Because Doswell was not born Jewish and because he had not undergone the extensive and formalized process required for conversion, Doswell had not satisfied the requirements of the Orthodox faith. Doswell's deposition testimony also demonstrated, in the court's view, a limited understanding of his self-proclaimed religious faith. Doswell knew little if anything of Jewish holidays, customs, or practices and did not understand the difference between the various branches of the Jewish faith. In addition, Doswell demonstrated a limited understanding of what constitutes "kosher" food, appearing erroneously to believe that kosher food must be prayed over. At no time had Doswell consulted with a Jewish rabbi to better inform himself.

On the basis of this evidence, the district court found that Doswell's stated preference for kosher food was not religiously motivated but was instead based on a secular desire for clean food not prepared by other prisoners. Although the court did "not question the sincerity of Doswell's belief that he is a Jew or his desire to follow the tenets of that faith," the court found that Doswell's belief that "Judaism requires him to keep [k]osher [was] mistaken." JA 309. On these findings, the court concluded that Doswell had failed to prove the existence of a protected free exercise right and dismissed the claim on that basis. This appeal followed.

II.

Doswell challenges both the district court's dismissal by summary judgment of his due process claim and the dismissal following bench trial of his free exercise claim.**2**

_____
**2** At the time briefs in this appeal were filed, Doswell also contended that his allegations should be interpreted as raising a claim under the Religious Freedom Restoration Act. The Supreme Court's decision in City of Boerne v. Flores, 117 S. Ct. 2157 (1997), striking down that Act makes consideration of this claim unnecessary.

4

A.

We take first the free exercise claim.

In evaluating it, we begin with the basic principle that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley , 482 U.S. 78, 84 (1987). In particular, imprisonment does not completely abrogate a prisoner's right to a free exercise of his religion. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987). But, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948). For that reason, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89. Here, the district court dismissed the claim on the basis that Doswell had failed to prove the existence of the protected free exercise right claimed, and so did not reach the question whether there might be penological justification for infringing upon it. The only issue before us, therefore, is whether the court erred in concluding that no free exercise right had been proved to exist, that is, whether the evidence failed to show that Doswell's asserted belief that he should observe kosher dietary laws was a belief "sincerely held and . . . in [his] own scheme of things, religious." United States v. Seeger, 380 U.S. 163, 185 (1965).

Certain established principles for evaluating the sincerity and religious basis for a purported belief are of particular relevance to this claim as it comes to us. It is well-settled that"religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." Thomas v. Review Bd. Ind. Empl. Sec. Div., 450 U.S. 707, 714 (1981). Adherents "may not be put to the proof of their religious doctrines or beliefs. Religious experiences which are as real as life to some may be incomprehensible to others." United States v. Ballard, 322 U.S. 78, 86 (1944).

Here, the district court did "not question the sincerity of Doswell's belief that he is a Jew or his desire to follow the tenets of that faith," JA 309, but, on our reading of the court's opinion, concluded that any belief that this required him to observe a kosher diet was secular as

5

opposed to religious in nature. Several statements in the district court's opinion lead us to this conclusion. The court observed that "individual practices not based in sincere, <u>religious</u> beliefs are not protected . . . ." <u>Id</u>. at 308 (emphasis in original). And, that "the court cannot find that Doswell's belief that he must practice a [k]osher diet is based on a religious belief." <u>Id.</u> at 309.

Whether one's beliefs and practices are religiously motivated is of course a difficult question for courts of law to decide. In deciding it, they must take care to "avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs." <u>Africa v. Com. of Pa.</u>, 662 F.2d 1025, 1031 (3d Cir. 1981). But the inquiry, however difficult, is necessary, for while "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests," <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 215-16 (1972), the Free Exercise Clause protects those beliefs that are "religious" and sincerely held.

The inquiry is of course particularly difficult when the asserted belief is a new or exotic one outside the mainstream of traditional, clearly established, religious beliefs held and practiced in the society. <u>See</u>, <u>e.g. Africa</u>, 662 F.2d at 1032-33 (assessing whether a locally practiced belief system called MOVE was religious in nature); <u>Gallahan v. Hollyfield</u>, 670 F.2d 1345 (4th Cir. 1982) (concluding that Native-American's belief that his hair was a "sense organ" was a protected religious belief under the First Amendment).

The belief asserted here, that as one professing the Jewish faith, Doswell was under obligation to observe kosher dietary laws, is not of such an exotic character. It involves a practice indisputably integral to that religious faith as traditionally practiced for millennia. That the practitioner's understanding of the origins, exact contours, or reasons for that particular practice may be mistaken, or incomplete, or at serious odds with the understanding of others holding the belief, including even those most expert by education or experience in interpreting its true nature, is beside the point. <u>See Thomas</u> 450 U.S. at 715-16 (observing that "the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"); <u>Dettmer v. Landon</u>, 799 F.2d 929, 932 (4th Cir. 1986) ("The Supreme Court

6

has recognized that differing beliefs and practices are not uncommon among followers of a particular creed.") (citation omitted).

To the extent therefore that the district court rested its decision solely on the basis that Doswell's belief "that Judaism require[d] him to keep [k]osher, [was] mistaken," the district court strayed from the proper judicial path in assessing whether a professed belief is or is not religious in nature. For though the sincerity of a professed religious belief may surely be questioned, its "validity" as a religious belief may not be questioned on the basis that the holder does not understand its true nature. See Seeger, 380 U.S. at 184. If this was the legal basis for the court's decision, the decision would therefore be legally flawed and could not stand.

But, that this was the legal basis is not sufficiently clear from the total context of the court's opinion to provide a confident basis for declaring it error requiring reversal. Two other possible views that can as plausibly be deduced as the basis for the court's decision require attention. They relate to the "sincerity" prong of the free exercise inquiry, specifically to the court's observation that while the court did "not question [hence found?] the sincerity of Doswell's belief that he is a Jew or his desire to follow the tenets of that faith", it nevertheless concluded that his belief that "Judaism requires him to keep [k]osher is mistaken." JA 309. This might indicate two quite different views of how the sincerity of belief requirement applied here.

One would be that the assumed (or found) sincerity of Doswell's religious belief extended only to a general acceptance of Judaism and its tenets but not specifically to the practice of kosher as one of its tenets--again because of Doswell's mistaken understanding of that particular tenet. That is to say, that a belief indisputably "religious" in nature could not be one sincerely held by one who was mistaken in his understanding of its exact nature. That is no more acceptable than is the closely-related view above discussed that one ignorant of the true meaning of a particular religious tenet could not therefore hold it as a "religious" belief. To the extent this was the basis of the court's ultimate determination, it also would be legal error. But, again, we cannot be confident enough that it was the basis for the court's decision to reverse the judgment on that ground.

7

There remains one other equally plausible basis for the court's decision that must be taken into account. This would be the view that though Doswell's belief that he must keep kosher was sincerely held, the reason for the sincerely held belief was the purely secular one of personal hygiene and sanitation and not because it was "rooted in [his] religion." Thomas, 450 U.S. at 713. That is suggested by the court's express finding that the belief was "based primarily on a desire to eat food which has not been prepared or touched by other inmates," JA 309, and the complementary statement that "the court cannot find that [the belief] is based on a religious belief." Id.

These observations may properly reflect a recognition that the same belief may be sincerely held by some as a religious belief and as sincerely held by others as a simple matter of secular preference; that the proper free exercise inquiry is therefore whether a belief is sincerely held as a religious belief; and that this will sometimes require distinguishing between the two as possible grounds for a particular sincerely held belief. If so, the view reflected comports with settled free exercise doctrine and could properly have informed the district court's factual assessment. See, e.g., Frazee v. Illinois Employment Security Dept., 489 U.S. 829, 833 (1989) (recognizing, in determining whether work-free Sabbath belief,"however sincere," was protected, "the difficulty of distinguishing between religious and secular convictions and in determining whether a professed belief is sincerely held"). But, again, it is not clear from all that was said that this was the view actually applied.

In sum, we see in the district court's opinion three possible alternative understandings of the applicable free exercise principles that may have provided the legal framework for the court's final decision. Whichever was the view actually held, it necessarily informed the court's ultimate factual finding that Doswell's asserted belief was not a sincerely held religious one. Either of two, if the basis for decision, would have involved legal misapprehensions fatally tainting the ultimate decision: (1) that Doswell's particular belief was not a "religious" one because it was at odds with a proper understanding of its true nature, or (2) that it was not a "sincerely held" one because "mistaken" as to its true nature. The third, that the belief, though sincerely held was sincerely held not as a religious belief but for purely secular

8

reasons, comports with free exercise doctrine and would have provided a proper legal framework for the court's factual assessment.

In this circumstance, we conclude that we must vacate the judgment dismissing this claim and remand it for reconsideration in light of this opinion. Vacatur and remand is required because we cannot know what the district court's dispositive factual findings would be if made under the proper legal framework, or whether, when so made, those findings would be supported by the evidence.

Within that framework, the proper inquiry is narrowly whether Doswell's asserted belief that he should observe a kosher diet is sincerely held as a religious belief or only for purely secular reasons. That he may be ignorant or mistaken as to the true nature of this belief as it is understood by others is irrelevant to whether his particular belief is "religious" or to whether he holds it "sincerely." Such ignorance or mistake as might be found would be relevant only to the issue whether for him it was sincerely held as a religious belief. And, on that issue, an adverse determination could only be based on a mediate finding that in asserting the belief Doswell was deliberately misrepresenting its true basis in his belief system. **3**

B.

Challenging the district court's dismissal of the procedural due process claim by summary judgment, Doswell contends that although under Meachum v. Fano, 427 U.S. 215 (1976), procedural due process protections were not triggered merely by his transfer within the prison system, they were triggered by the impact had upon the liberty interests implicated in the Free Exercise Clause. See Williams v. Lane, 851 F.2d 867, 880 (7th Cir. 1988).

_____

**3** Resolution of that issue in Doswell's favor would not of course end the matter. The claim might yet be defeated by the Commonwealth's defense of penological justification for the transfer that allegedly impinged on the free exercise right. See Turner , 482 U.S. at 89. That potential issue has not been addressed by the district court and we express no opinion upon it.

9

We have concluded that we should consider this claim to be essentially subsumed within the remanded free exercise claim, and decline therefore to disturb the district court's disposition. So far as we can see, assuming without deciding the viability of Doswell's legal theory, success on this claim directly depends upon success on the free exercise claim. If the latter claim fails, so must the due process claim under Doswell's theory. If the free exercise claim were to succeed, we can think of no further remedy for violation of the related due process claim than would be provided on the free exercise claim.

III.

Accordingly, we vacate the judgment dismissing the free exercise claim and remand it for further proceedings consistent with this opinion. We affirm dismissal of the procedural due process claim.

SO ORDERED

WIDENER, Circuit Judge, concurring:

If the district court on remand finds it to be clear that the belief of Doswell which has prompted his objection to a diet other than kosher occupies the same place in his life as the belief in a kosher diet holds in the lives of Orthodox Jews, and the same is sincerely held, then he is entitled to the kosher diet, unless there is some other reason the Commonwealth need not supply it. See Seeger, 380 U.S. 163 at 176 and 187.

On that basis, I concur in the majority opinion.

10