**Charles McCORKLE,**
**Plaintiff–Appellant,**

v.

**W.E. JOHNSON, Warden, Joseph Kolb, Chaplain, Freddie V. Smith, Commissioner, Defendants–Appellees.**

**No. 88–7478**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 24, 1989.

---

P. David Bjurberg, David Christy, and Beth Jackson Hughes, Asst. Attys. Gen., Montgomery, Ala., for defendants-appellees.

Before VANCE, JOHNSON and CLARK, Circuit Judges.

PER CURIAM:

 The judgment of the district court is AFFIRMED on the basis of the memorandum opinion entered by the district court on July 13, 1988. (Attached hereto as Appendix.)

## APPENDIX

In The United States District Court For The Southern District of Alabama Southern Division

Charles McCorkle,

Plaintiff,

vs.

W.E. Johnson, et al.,

Defendants.

Civ. A. No. 84–0918–C

## MEMORANDUM OPINION

This action was referred to the Magistrate for submission of recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate submitted recommendations, and timely objections to those recommendations were filed by the plaintiff. In accordance with 28 U.S.C. § 636(b)(1)(C), the court has made a *de novo* determination of those portions of the Magistrate's recommendations to which objections were made.

Charles McCorkle, a state prisoner confined in the Holman facility, filed this complaint pursuant to 42 U.S.C. § 1983 seeking redress for the deprivation of his First Amendment right to freely exercise his chosen religion. The defendants are prison officials who allegedly impinged on the plaintiff's practice of the Satanic "religion" by denying plaintiff's request for access to certain Satanic books and articles, including *The Satanic Bible, The Satanic Book of Rituals*, and a Satanic medallion. Their defense is three-fold: (1) Satanism is not a religion entitled to First Amendment protection; (2) assuming it is a religion, the plaintiff is not a sincere believer in Satanism; and (3) access to the requested books and medallion would pose a threat to the security of the prison. The Magistrate held that all three defenses were valid and

recommended that judgment be entered in favor of the defendants.

The threshold questions of whether Satanism is a religion and, if it is, whether plaintiff is a sincere believer need not be decided since it is clear that, even if these questions are answered affirmatively, the challenged prison policy does not violate the Free Exercise Clause of the First Amendment as it is applied to the States through the Fourteenth Amendment. When it is alleged that a prison policy impinges on an inmate's constitutional rights, the policy is valid "if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Giving the deference that is due to the officials charged with prison administration, *see Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977), the court finds that the policy at issue in the present case successfully withstands this scrutiny; it is not an exaggerated response to the situation.

There are several factors which are relevant in determining the reasonableness of this policy. First, there must be a "valid, rational connection" between the prison restriction and the legitimate governmental interest put forward to justify it. *Turner,* 107 S.Ct. at 2262 (quoting *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 3232, 82 L.Ed.2d 438 (1984)). The restriction at issue here clearly meets this standard. The prohibition on Satanic materials such as those requested by the plaintiff is justified by the defendants' concern for institutional security and order. It is an informed and measured response to the violence inherent in Satan worship, and to the potential disorder that it might cause within the prison.

Testimony at the evidentiary hearing turned gruesome when the plaintiff recounted two of the rituals espoused by *The Satanic Book of Rituals.* The fertility ritual includes the sacrifice of a female virgin, preferably a Christian. Also explained in this book, according to the plaintiff, is the initiation ritual. Wrist-slashing, blood-drinking, and the consumption of human flesh—usually fingers—are some of the gory highlights of this ceremony. The plaintiff quipped that hopefully the person whose flesh is eaten is alive at the end of the ritual.

Candles, a common item in many religious ceremonies, are also used in the Satanic rituals. However, the candles preferred by the plaintiff and other Satanists are not made of wax or paraffin; instead, they are made from the fat of unbaptized infants.

An inmate witness subpoenaed by the plaintiff testified that he has observed the plaintiff performing certain Satanic rituals within Holman Prison on several occasions. According to this testimony, the plaintiff, as part of these rituals, drew his own blood by slicing his wrist or using a needle, and burned paper. Mr. McCorkle has also asked other inmates for their blood. Approximately three years ago, one inmate got highly irritated when the plaintiff requested that he donate a vial of blood for use in the worship of Satan.

The teachings of *The Satanic Bible,* which the plaintiff claims to wholeheartedly believe, and desires to study, also present a significant threat to security and order within the prison. W.E. Johnson, Warden of Holman Prison, testified that upon review of *The Satanic Bible,* he concluded that persons following its teachings would murder, rape or rob at will without regard for the moral or legal consequences. Moreover, Warden Johnson thought that the plaintiff's safety would be threatened if other inmates became aware of the contents of *The Satanic Bible.* Accordingly, he denied plaintiff's requests.

Testimony from proclaimed Satanists, and an independent review of the book, confirms Warden Johnson's conclusions about the beliefs of Satanists. A "master counselor" of a Satanic sect testified that the premise underlying all of the teachings in *The Satanic Bible* is that life should be lived according to individual desires without regard for conscience or consequences. Certain portions of the book are somewhat harsher. For instance, in the chapter entitled "The Book of Satan," author Anton Szandor LaVey states that right and wrong

have been inverted too long. He challenges readers to rebel against the laws of man and God. Furthermore, LaVey declares that hatred of ones enemies is of utmost importance; revenge should be a top priority.

Clearly, practices such as those described above, and the beliefs that encourage them, cannot be tolerated in a prison environment since they pose security threats and are directly contrary to the goals of the institution. Allowing the plaintiff access to the requested books and medallion would only encourage such behavior. Thus, it cannot be said that the policy in question is arbitrary; rather, it is logically connected to the governmental interests asserted.

A second factor relevant in determining the reasonableness of a prison restriction is that alternative means of exercising the asserted right remain open. *Turner*, 107 S.Ct. at 2262. The inquiry here is whether, under the restrictions imposed, the plaintiff is deprived of all means of practicing his "religion." *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 2406, 96 L.Ed.2d 282 (1987). Testimony at trial revealed that the plaintiff and other members of the various Satanic sects in Holman Prison are practicing Satanists despite the deprivation of the books and medallion requested by the plaintiff. Moreover, plaintiff indicated that he wears a duplicate medallion and has memorized portions of both *The Satanic Bible* and *The Satanic Book of Rituals*. Clearly, the restrictions about which plaintiff complains have not foreclosed all avenues of his worship of Satan.

A third consideration in the reasonableness inquiry is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. *Turner*, 107 S.Ct. at 2262. Warden Johnson justifiably believes that books and memorabilia that teach hatred for one's fellow man and disrespect for laws and legal order, and that encourage and explain the practice of violent acts such as flesh-eating and blood-letting, pose substantial threats to prison security and order, and are contrary to the rehabilitative goals of the institution. Consequently, the plaintiff's asserted right to freely worship Satan can be exercised only at significant costs to guards, other prisoners, and society in general. Where such a trade-off is necessary, the choice made by prison officials should not be lightly set aside by the court since such judgments are peculiarly within their province. *See Turner*, 107 S.Ct. at 2263, (*citing Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 2806, 41 L.Ed.2d 495 (1974)).

Finally, the presence of workable alternatives is evidence of the unreasonableness of the restrictions imposed. *Turner*, 107 S.Ct. at 2262. Plaintiff, however, has not offered any alternatives that would fully accomodate his asserted rights at a de minimis cost to the valid penological interests that gave rise to the imposed restrictions.

The restrictions challenged by the plaintiff are reasonably related to valid penological interests. Accordingly, the court refuses to substitute its judgment on difficult matters of prison administration for the determinations of those charged with the formidable task of running a prison. *See O'Lone*, 107 S.Ct. at 2407. The court will by separate document enter final judgment dismissing the plaintiff's complaint on the merits.

DONE this 13 day of July, 1988.

Emmett R. Cox
UNITED STATES CIRCUIT JUDGE
SITTING BY DESIGNATION